652 S.E.2d 83

Sherrie Jean FLOYD, Respondent,

v.

Richard MORGAN, Jr., Appellant.

No. 4289.

Court of Appeals of South Carolina.

Submitted May 1, 2007.
Decided Aug. 23, 2007.
Rehearing Denied Oct. 26, 2007.

J. Mark Taylor and Katherine Carruth Link, both of Columbia, for Appellant.

Richard Giles Whiting and Spencer Andrew Syrett, both of Columbia, for Respondent.

CURETON, A.J.:

Richard Morgan (Father) appeals from a family court order granting Sherrie Jean Floyd's (Mother) request for a child support reduction. Father further argues the family court erred in modifying a contractual term of the parties' settlement agreement, and in denying his request for attorney's fees. We affirm.[1]

## FACTS

In August 2000, the family court granted Father a divorce from Mother on the ground of adultery. Pursuant to an agreement of the parties, the court granted sole custody of the parties' two minor children to Father, and visitation in excess of 109 overnights per year to Mother. Mother agreed to pay child support in the amount of $920 per month. The amount of child support was calculated by the parties pursuant to Worksheet A of the South Carolina Child Support Guidelines (the guidelines). Mother also agreed to pay Father $17,500 in

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

attorney's fees and costs.  All of these provisions were part of a negotiated settlement agreement approved by the family court and incorporated into the divorce decree.

In May 2004, Mother sought sole custody of the children or, alternatively, a shared or joint custody arrangement.  Mother also sought modification of her child support.  Upon request of both Father and Mother, the court appointed a guardian ad litem for the children.  Father and Mother agreed that because Father's income had increased and Mother's income had decreased, they would temporarily reduce Mother's child support payment from $920 to $808 per month while the action was pending.  This reduction was approved by the court. Again in 2006, Father and Mother agreed to modify their original agreement as to visitation, but not materially modifying the number of overnight visits the mother had with the children.

However, the parties did not reach an agreement as to two issues:  (1) Mother's request to permanently modify child support, and (2) both Mother's and Father's requests for attorney's fees and costs.  The parties disputed whether child support should be calculated in accordance with Worksheet A (for sole custody) or Worksheet C (for shared custody) of the guidelines.[2]

In June 2006, the court granted Mother's request to modify the provisions of the divorce decree regarding child support, finding the changes in the parties' incomes and the elimination of child care expenses in the amount of $544.00 per month constituted a change of circumstances.  The court further held that it would exercise its discretion and calculate Mother's new child support obligation utilizing Worksheet C of the guidelines, instead of Worksheet A. Utilizing the guidelines, the court reduced Mother's child support obligation to $152 per month.  The court additionally ordered that each party be

---

**2.** Neither party testified at the hearing before the trial court.  Instead, both parties' attorneys made statements to the court, which were essentially undisputed by opposing counsel.  The record on appeal contains the affidavit of Father's counsel requesting attorney fees, but we are uninformed what other documents, if any, were before the trial court.  The trial court's order indicates the Mother submitted some documentation as to additional sums she spent on the children over and above the support she paid the Father.

responsible for his or her own attorney's fees and costs. This appeal followed.

## STANDARD OF REVIEW

In appeals from the family court, this court may find facts in accordance with our own view of the preponderance of the evidence. *Nasser–Moghaddassi v. Moghaddassi,* 364 S.C. 182, 189, 612 S.E.2d 707, 711 (Ct.App.2005) (citing *Emery v. Smith,* 361 S.C. 207, 213, 603 S.E.2d 598, 601 (Ct.App.2004)). However, this broad scope of review does not require us to disregard the family court's findings. *Bowers v. Bowers,* 349 S.C. 85, 91, 561 S.E.2d 610, 613 (Ct.App.2002); *Badeaux v. Davis,* 337 S.C. 195, 202, 522 S.E.2d 835, 838 (Ct.App.1999).

## LAW/ANALYSIS

### I.  Modification of Child Support

Father contends the family court erred in granting Mother's request for a reduction in child support when there was no evidence to support the court's finding of a change in circumstances with respect to the level of Mother's overnight visitation. We disagree.

The family court may always modify child support upon a proper showing of a change in either the child's needs or the supporting parent's financial ability. *Upchurch v. Upchurch,* 367 S.C. 16, 26, 624 S.E.2d 643, 647–48 (2006) (citing *Moseley v. Mosier,* 279 S.C. 348, 351, 306 S.E.2d 624, 626 (1983)). The party seeking the modification has the burden to show changed circumstances. *Id.* at 26, 624 S.E.2d at 648. This burden is increased where the child support award is based on a settlement agreement. *Id.* Moreover, changes within the contemplation of the parties at the time of the initial decree are not sufficient bases for the modification of a child support award. *Id.*

In the present case, the family court placed great emphasis on the substantial changes in the parties' incomes. In its June 14, 2006 order, the court noted that at the time of the divorce in 2000, Father earned $4000 per month in income, while Mother earned $4067. By the time of the initial hearing in 2004, Father's monthly income increased 29% to $5150, while

Mother's income only increased 18% to $4800. By 2005, Father's income increased again to $5421, while Mother's income decreased to $4785. Then, at the time of the final hearing in 2006, Father's income increased to $5700, while Mother's income increased back to $4800. The court concluded that in 2006, Father's income increased 43% from 2000, while Mother's income increased only 18% between 2000 and 2006. Additionally, the court noted that child care expenses, which were apparently paid by Father, no longer existed and that the medical expenses had not changed substantially since the 2000 decree.

We agree with the family court that the above mentioned changes were significant enough to support a finding of a substantial or material change of circumstances warranting a modification of child support. *See Rogers v. Rogers,* 343 S.C. 329, 540 S.E.2d 840 (2001) (holding Father's 21% increase in income, as compared to Mother's 8% increase in income, together with increased child care expenses warranted increase in child support).

## II. Calculation of Amount of Child Support

■ Father contends the family court erred in modifying a contractual term of the parties' negotiated settlement agreement, from the use of Worksheet A to Worksheet C to govern Mother's child support obligation, inasmuch as the Mother's overnight visitation did not materially change. We disagree.

■ Whether or not the family court had discretion upon a finding of change of circumstances to change the method of calculating child support, utilizing a different guidelines worksheet when there was no material change in the number of overnight visits, is a novel issue in South Carolina. As previously stated, ordinarily, a party seeking to modify an existing child support obligation has the burden of establishing changed circumstances. *Upchurch,* 367 S.C. at 26, 624 S.E.2d at 648. To warrant a change in child support, the change of circumstances must be substantial or material. *Townsend v. Townsend,* 356 S.C. 70, 73, 587 S.E.2d 118, 119 (Ct.App.2003).

South Carolina Code Annotated section 20–7–852(A) (Supp. 2006) states that "[i]n any proceeding for the award of child support, there is a rebuttable presumption that the amount of

the award which would result from the application of the guidelines required under section 43–5–580(b) is the correct amount of child support to be awarded." A different amount may be awarded only "upon a showing that application of the guidelines in a particular case would be unjust or inappropriate." *Id.* Moreover, "[w]hen the court orders a child support award that varies significantly from the amount resulting from the application of the guidelines, the court shall make specific, written findings of those facts upon which it bases its conclusion supporting that award." *Id.* Section 20–7–852(C) (Supp. 2006) states a court "shall" consider certain factors which ". . . may be used in determining whether a change of circumstances has occurred which would require a modification of an existing order." Among other reasons, section 20–7–852(C)(11) states the court may consider "substantial disparity of incomes in which the noncustodial parent's income is significantly less than the custodial parent's income, thus making it financially impractical to pay what the guidelines indicate the noncustodial parent should pay."

Regulation 114–4720 of the South Carolina Code (Supp. 2006) provides the court can determine the total child support obligation by adding the basic child support as provided in the guidelines to health insurance premiums and child care costs. Thereafter, "the total child support obligation is divided between the parents in proportion to their incomes." S.C.Code Ann. Regs. 114–4720(A)(15)(a) (Supp.2006). There is no contention by the parties that the trial court did not properly compute each parent's child support obligation based upon a literal application of the guidelines.

Further, regulation 114–4730(A) of the South Carolina Code (Supp.2006) provides that "[w]hen both parents are deemed fit, and other relevant logistical circumstances apply, shared custody should be encouraged. . . ." The regulation states further that shared custody adjustments are advisory, not mandatory. *Id.* Additionally, if each parent has court-ordered visitation with the children overnight for more than 109 nights each year and both parents contribute to the expenses of the children in addition to the payment of child support, the court may make a "shared custody adjustment," which "shall be calculated using Worksheet C." *Id.* The regulation goes on to explain that "if the 109 overnights threshold is reached for

shared physical custody, this adjustment may be applied even if one parent has sole legal custody." *Id.*

In 2000, at the time Father and Mother entered into the agreement in question, Mother's visitations were approximately 147 overnights visits per year, which was clearly in excess of the 109 overnight visits required to put into play the shared parenting provisions of the guidelines. Despite the number of overnight visits granted, Mother agreed to pay Father $920 per month in child support based upon figures set forth in an attached "Child Support Obligation: Worksheet A." Although Mother's attorney argued to the trial court in this case that the Mother knew nothing about the various worksheets when she signed the 2000 agreement, the agreement declares both parties entered into the agreement freely, not under duress or undue influence, and that they actively took part in the negotiations. Additionally, the family court found the agreement to be fair, equitable and reasonable, and approved the agreement as incorporated and merged into the divorce decree. Nevertheless, the 2000 decree does not explain why there was a deviation from the amount that should have presumably been awarded by application of the guidelines. Nor, did the decree or agreement in any way bind the parties to the use of worksheet A in future child support calculations based on a change of circumstances.

In the groundbreaking 1983 case of *Moseley v. Mosier, supra,* our supreme court stated in rather specific terms that "family courts have continuing jurisdiction to do whatever is in the best interest of the child regardless of what the separation agreement specified." *Moseley,* 279 S.C. at 351, 306 S.E.2d at 626. Moreover, it is clear that a merged child support agreement loses its contractual character after it is judicially decreed as mandated by *Moseley. Emery v. Smith,* 361 S.C. 207, 214, 603 S.E.2d 598, 601–03 (Ct.App.2004).

While no South Carolina case touches upon the scenario of this case, the North Carolina case of *Beamer v. Beamer,* 169 N.C.App. 594, 610 S.E.2d 220 (2005), reflects on how our sister state views the matter. In *Beamer,* the court reversed the trial court deviation from the guidelines for lack of specific findings of fact to support the "(1) the reasonable needs of the children and (2) the basis for the amount of child support

ultimately awarded." *Id.* at 221. Procedurally, the court stated, however, that "[o]nce a substantial change in circumstances has been shown by the party seeking modification, the trial court then 'proceeds to follow the Guidelines and to compute the appropriate amount of child support.'" *Id.* at 222 (citing *Davis v. Risley,* 104 N.C.App. 798, 411 S.E.2d 171, 173 (1991)).

The parties are in agreement that Mother has custody of the children approximately 147 overnights per year or roughly 40% of the time. The idea behind the adjustments for shared custody is that the party having custody of the children during a certain time period will take care of most of the children's needs during the time he/she has custody. *See* S.C.Code Ann. Regs. 114–4730(A). As we read the statute and regulation, they presume that the appropriate amount of support in a shared parenting arrangement is the amount resulting from an application of the guidelines. Since neither party claims the trial judge should have deviated from the guidelines due to any of the statutory reasons set forth in section 20–7–852(C),[3] or that the modification of Mother's support obligation will somehow adversely affect the welfare of the children, we think it was simply a mathematical calculation on the part of the trial court to establish support based on the guidelines. Therefore, we hold the trial court had discretion to apply the guidelines then in effect upon a showing of a substantial change of circumstances.

### III. Attorney's Fees

Father contends the family court erred in denying him attorney's fees when he was the prevailing party with respect to the issues raised in this action. We disagree.

Attorney's fees may be assessed against a party in an action brought in the family court. S.C.Code Ann. § 20–7–420(38) (Supp.2005); *Patel v. Patel,* 359 S.C. 515, 533, 599 S.E.2d 114, 123 (2004). The award of attorney's fees is within the discretion of the court. *Hailey v. Hailey,* 357 S.C. 18, 31, 590

---

3. We recognize that arguably Father contends the parties' agreement from 2000 is a sufficient basis to not apply the worksheet component of the statute, but we read section 20–7–852(C)(13) to apply in the present situation to the 2000 support order only, inasmuch as the parties reached no agreement as to child support in 2006.

S.E.2d 495, 502 (Ct.App.2003). The family court's decision regarding attorney's fees will not be disturbed absent an abuse of discretion. *Green v. Green*, 320 S.C. 347, 353, 465 S.E.2d 130, 134 (Ct.App.1995).

■ In deciding whether to award attorney's fees, the family court should consider: (1) each party's ability to pay his or her own fees; (2) the beneficial results obtained by counsel; (3) the respective financial condition of each party; and (4) the effect of the fee on each party's standard of living. *Upchurch*, 367 S.C. at 28, 624 S.E.2d at 648–49; *Browning v. Browning*, 366 S.C. 255, 269, 621 S.E.2d 389, 396 (Ct.App.2005).

Here, Mother brought this action for a change in custody. Although the parties settled the custody aspect of the case, we have concluded the family court did not err in reducing Mother's child support. We thus hold that neither party prevailed. In any event, the family court ordered that each party be responsible for his or her own attorney's fees and costs. We therefore find that the family court did not err in denying Father attorney's fees and costs.

## CONCLUSION

Based on the foregoing, we find the family court did not err by granting Mother's request for a reduction in child support. We also find the family court did not err by modifying a contractual term of the parties' negotiated settlement agreement, from the use of Worksheet A to Worksheet C of the child support guidelines, to govern Mother's child support obligation. Accordingly, the family court's decision is

**AFFIRMED.**

WILLIAMS, J., concurs.

SHORT, J., dissents in part and concurs in part in a separate opinion.

SHORT, J. (dissenting in part and concurring in part):

I would reverse the family court's recalculation of child support utilizing Worksheet C in place of the originally agreed upon Worksheet A of the South Carolina Child Support Guidelines (the Guidelines), and for that reason, I respectfully

dissent. I adopt the majority's facts and standard of review, but I disagree with the analysis and would find as follows.

The majority utilizes *Upchurch v. Upchurch* for the proposition that the family court may always modify child support upon a proper showing of change in either the child's needs or the supporting parent's financial ability. 367 S.C. 16, 26, 624 S.E.2d 643, 647–48 (2006). While I agree with the majority that due to significant changes in the parties' income, a modification of the child support amount was appropriate, I find this modification should have been calculated under Worksheet A of the Guidelines.

In an August 30, 2000 order (the 2000 order), the family court fully approved, incorporated and merged the parties' custody, support and property settlement agreement into its order. This agreement called for Mother to pay "Father the amount of $920.00 per month in child support based upon figures set forth in the attached Child Support Obligation Worksheet A." The family court found that the parties had negotiated and entered into the agreement with "the benefit of advice and counsel" and that they "fully comprehended its terms and conditions." Further, the court found each party entered into a "fair, equitable, and reasonable" agreement "freely, knowingly, voluntarily, and without threats or coercion."

I first note that this 2000 order of the family court was never appealed. Therefore, it has become the law of the case, and any review of the propriety of utilizing Worksheet A, as noted in the parties' agreement and consequently the court's order, would be contrary to our rules of preservation.[4] The majority correctly notes regulation 114–4730(A) of the South Carolina Code (Supp.2006) provides a family court with **discretion** to apply a "shared custody adjustment" which provides for the utilization of Worksheet C to calculate child support for parents who have court ordered visitation with a

---

4. We are mindful that the appellate courts of this state have disregarded rules of error preservation where the best interests of a child were concerned. See *Joiner v. Rivas*, 342 S.C. 102, 107, 536 S.E.2d 372, 374 (2000). However, as the majority notes, the changing of worksheets in this matter does not effect the interests of the children; "it was simply a mathematical calculation on the part of the trial court to establish support based on the guidelines."

child for more than 109 overnights each year. However, to review the family court's 2000 order for an abuse of discretion error at this juncture would be inappropriate. The proper query to be addressed in this matter is whether the necessary change of circumstances has occurred to modify the original order by calculating child support under Worksheet C instead of Worksheet A. Nonetheless, even were we to review the propriety of utilizing Worksheet A in the 2000 order, I believe this issue fails on its merits. The majority notes that the family court failed to provide specific findings of fact to explain why it deviated from the Guidelines in calculating the child support owed. While I agree that were the court to deviate from the Guidelines in its own discretion it would have to provide specific findings to justify this action, in this matter, **the parties agreed** to utilize Worksheet A. The parties are free to agree on child support which is greater than that as required by law. *See Ratchford v. Ratchford,* 295 S.C. 297, 299, 368 S.E.2d 214, 215 (Ct.App.1988) ("A parent can contractually obligate himself beyond the support requirements imposed by law."). Where the parties agree to a greater amount of support than required by law, I fail to discern why the family court should be required to make specific findings of fact to justify such deviation from the Guidelines.[5]

Regardless of the propriety of the family court's application of Worksheet A to calculate child support under the 2000 order, as noted above, the family court retains jurisdiction to modify child support upon a proper showing of change in either the child's needs or the supporting parent's financial ability. "Where there is an agreement regarding child support, however, the family court should not decide support issues as if there is no agreement." *Ratchford,* 295 S.C. at 299, 368 S.E.2d at 215. The parties agreed to calculate the support obligation under Worksheet A, and as reflected in the 2000 order, this calculation based on the parties then existing

---

5. The North Carolina Court of Appeals case (*Beamer v. Beamer,* 169 N.C.App. 594, 610 S.E.2d 220 (2005)), utilized by the majority to support its point that deviation from the Guidelines must be supported by specific findings of fact, is distinguishable from the matter at hand. In the *Beamer* case, there was no agreement by the parties as to which worksheet to apply, and the court *sua sponte* determined it should calculate support in a manner not consistent with the North Carolina Guidelines.

income, resulted in an amount of $920.00. While the dollar amount was determined through a calculation based on the parties' then existing incomes and not based on the parties' specific assent, the decision to utilize Worksheet A was agreed upon by the parties. Consequently, I believe that while the dollar amount is modifiable based on changes in the income of the parties, I do not find the use of Worksheet A to be modifiable based solely on changes in the parties income.[6] A change in worksheets should be predicated on a change in the visitation such that Mother would increase her overnights from an amount less than 109 nights to an amount in excess of 109 nights thereby providing the court with discretion to apply the shared custody adjustment as noted in regulation 114–4730(A) of the South Carolina Code (Supp.2006). However, it is undisputed that Mother was afforded visitation in excess of 109 overnights in the 2000 order. Consequently, she agreed to calculate her support obligation under Worksheet A while already having visitation in excess of 109 overnights per year. Mother "freely, knowingly, voluntarily, and without threats or coercion" agreed to forego the possibility of a shared custody adjustment. Therefore, we have no substantial change in the visitation, and Mother is not entitled to a modification of her previously agreed to usage of Worksheet A.

Further, the majority cites *Upchurch* for the notion that "changes within the contemplation of the parties at the time of the initial decree are not sufficient bases for the modification of a child support award." 367 S.C. at 26, 624 S.E.2d at 648. I agree and can discern no manner in which one could argue Mother, having been afforded over 109 overnights per year by the 2000 order and thereby potentially being entitled to a shared custody adjustment, did not have the use of a particu-

---

**6.** I again note the majority's use of *Beamer* to establish that "once a substantial change in circumstances has been shown by the party seeking modification, the trial court then 'proceeds to follow the Guidelines and to compute the appropriate amount of child support.'" This intimates that once a substantial change has been found, the court is free to change even the worksheet to be used. This may hold true in cases such as *Beamer* where there is no prior agreement of the parties as to which worksheet to use. However, in light of the precedent handed down in *Ratchford* dictating that where there is an agreement, the court should not decide support issues as if there is no agreement, I find *Beamer* to be unpersuasive under the facts of this case.

lar worksheet within her contemplation when she agreed to utilize Worksheet A.

For these reasons, I would reverse the family court's usage of Worksheet C and remand the issue of child support for calculation of a proper support obligation under the agreed upon Worksheet A. As to the other issues noted in this appeal, I concur with the majority.