681 S.E.2d 570

**Sherrie Jean FLOYD, Respondent,**

v.

**Richard MORGAN, Jr., Petitioner.**

**No. 26681.**

Supreme Court of South Carolina.

Heard May 13, 2009.
Decided July 6, 2009.
Rehearing Denied Aug. 20, 2009.

J. Mark Taylor, of Moore Taylor & Thomas, of W. Columbia, and Katherine C. Goode, of Winnsboro, for Petitioner.

Richard G. Whiting and Spencer A. Syrett, both of Columbia, for Respondent.

Justice BEATTY.

In this domestic relations case, Sherrie Jean Floyd (Mother) moved to reduce the amount of her child support payment to Richard Morgan, Jr. (Father). After the family court granted this reduction and denied each party's request for attorney's fees, Father appealed the order to the Court of Appeals. In a divided decision, the Court of Appeals affirmed the family court's order. *Floyd v. Morgan*, 375 S.C. 246, 652 S.E.2d 83

(Ct.App.2007). This Court granted Father's petition for a writ of certiorari. We reverse the decision of the Court of Appeals and remand this case to family court.

## FACTUAL/PROCEDURAL HISTORY

By order dated August 30, 2000, the family court granted Father a divorce from Mother on the ground of adultery. Prior to the issuance of this order, the parties entered into a custody, support, and property settlement agreement. Pursuant to this agreement, the court granted Father custody of the parties' two minor children, ages six and eight, and granted Mother visitation in excess of 109 overnights per year.[1]

Because Mother's visitation exceeded 109 overnights per year, it satisfied the threshold amount to constitute a shared custody arrangement.[2] The parties, however, agreed to calculate Mother's child support obligation pursuant to a sole custody arrangement which resulted in an amount of support greater than under a shared custody calculation. Specifically, this agreement provided: "Mother shall directly pay Father the amount of $920.00 per month in child support based upon figures set forth in the attached Child Support Obligation Worksheet A." The family court approved the agreement and incorporated it into the divorce decree.

In May 2004, Mother sought sole custody of the children or, in the alternative, a shared or joint custody arrangement. Additionally, Mother requested modification of her child support obligation.

In June 2005, due to an increase in Father's income and a decrease in Mother's income, the parties agreed they would temporarily reduce Mother's child support payment from $920

---

**1.** Although the agreement did not specifically identify the number of overnight visits allotted to Mother, it set forth a weekly, monthly, and holiday time schedule. Based on this schedule, Mother was granted 147 overnight visits per year.

**2.** *See* 27 S.C.Code Ann. Regs. 114–4730(A) (Supp.2007) ("[S]hared physical custody means that each parent has court-ordered visitation with the children overnight for more than 109 overnights each year (30%) and that both parents contribute to the expenses of the child(ren) in addition to the payment of child support.").

to $808 per month while the action was pending. By consent order, the court approved the parties' agreement.

In January 2006, Mother and Father agreed to modify their original agreement regarding the timing of Mother's visitation. They did not, however, modify the number of Mother's overnight visits with the children. The family court approved this modification.

Despite these modifications, the parties failed to reach an agreement concerning the following two issues: (1) Mother's request to permanently reduce her child support obligation, and (2) both Mother's and Father's requests for attorney's fees and costs. In terms of the child support reduction, the parties disputed whether child support should be calculated in accordance with Worksheet A (for sole custody) of the South Carolina Child Support Guidelines (the Guidelines), as referenced in the parties' agreement, or Worksheet C (for shared custody) of the Guidelines.

After a hearing, the family court [3] granted Mother's request to modify the provisions of the original divorce decree regarding child support. In so ruling, the court found the 43% increase in Father's income and the elimination of child care expenses in the amount of $544.00 per month constituted a substantial change of circumstances.

The family court calculated Mother's new child support obligation pursuant to Worksheet C (shared custody) of the Guidelines and reduced Mother's support payment to $152 per month. Although the court recognized the parties' agreement specified that child support calculations would be made using Worksheet A (sole custody), the court believed it could exercise its discretion to choose between the two methods of calculation.

In explaining this ultimate calculation, the court considered the fact that Mother's current visitation was 147 days and that she had spent approximately $3,000 in expenses above her child support obligation.

---

**3.** We note the family court judge who heard the 2006 action for modification of child support was not the same judge who issued the 2000 decree of divorce.

Additionally, the court found each party should be responsible for his or her own attorney's fees and costs.

Father appealed the family court's order to the Court of Appeals. In a divided opinion, the Court of Appeals affirmed the family court's reduction of Mother's child support obligation and denied Mother's and Father's requests for attorney's fees and costs. *Floyd v. Morgan,* 375 S.C. 246, 652 S.E.2d 83 (Ct.App.2007).

Relying solely on this Court's decision in *Rogers v. Rogers,* 343 S.C. 329, 540 S.E.2d 840 (2001),[4] the Court of Appeals found the increase in Father's income as compared to Mother's, the elimination of child care expenses, and the consistent amount of medical expenses since the divorce constituted a substantial change of circumstances which warranted a modification of Mother's child support obligation. *Id.* at 251, 652 S.E.2d at 86.

In reaching this conclusion, the Court of Appeals pointed out that at the time of the divorce in 2000, Father earned $4,000 per month whereas Mother earned $4,067. By the time of the initial hearing in 2004, Father's monthly income increased 29% to $5,150, while Mother's income only increased 18% to $4,800. In 2005, Father's income increased to $5,421, while Mother's income decreased to $4,785. At the time of the final hearing in 2006, Father's income increased to $5,700, whereas Mother's income returned to $4,800. According to the family court and the Court of Appeals, these income fluctuations represented a 43% increase to Father's income since 2000 compared to only an 18% increase to Mother's income. *Id.* at 251, 652 S.E.2d at 86.

Referencing several provisions of section 20–7–852[5] of the South Carolina Code and the accompanying Regulations 114–

---

**4.** In *Rogers,* this Court found Mother was entitled to an increase in child support based on a 21% increase in Father's income and an increase in child care expenses. *Rogers,* 343 S.C. at 333, 540 S.E.2d at 842.

**5.** The Court of Appeals referenced several subsections of section 20–7–852 which governs the award and modification of child support. S.C.Code Ann. § 20–7–852(A)–(C) (Supp.2006). We note this code section is now designated as section 63–17–470 pursuant to the General Assembly's restructuring of the Children's Code. S.C.Code Ann. § 63–

4720 and 114–4730,[6] the Court of Appeals held the trial court had discretion to apply Worksheet C, the shared custody guidelines, upon Mother's showing of a substantial change of circumstances. *Id.* at 254, 652 S.E.2d at 88.

Because Mother's visitations were approximately 147 overnights per year, which clearly exceeded the 109 overnight visits required to put into effect the shared parenting provisions of the Guidelines, the Court of Appeals found Worksheet C was the appropriate method of calculating a reduction in Mother's child support obligation. *Id.* at 253, 652 S.E.2d at 87.

Although the Court of Appeals acknowledged the terms of the parties' 2000 agreement and the family court's incorporation of this agreement into the divorce decree, the Court of Appeals dismissed it as inconsequential on the grounds the 2000 divorce decree: 1) did not explain why there was a deviation from the amount that should have presumably been awarded by application of the Guidelines, and 2) did not bind the parties to use Worksheet A in future child support calculations based on a change of circumstances. *Id.* Citing this Court's decision in *Moseley v. Mosier*, 279 S.C. 348, 306 S.E.2d 624 (1983), the Court of Appeals explained that "a merged child support agreement loses its contractual character after it is judicially decreed." *Id.* at 253, 652 S.E.2d at 87.

Having found the family court did not err in reducing Mother's child support obligation and the parties had settled the custody aspect of the case, the Court of Appeals affirmed the denial of Father's request for attorney's fees and costs. *Id.* at 255, 652 S.E.2d at 88.

This Court granted Father's petition for a writ of certiorari to review the decision of the Court of Appeals.

---

17–470 (2009); S.C.Code Ann. § 20–7–852 (Supp.2008). Because this case arose prior to the re-codification, we use the former statutory citations.

**6.** These Guidelines govern child support awards as provided in section 20–7–852 of the South Carolina Code. 27 S.C.Code Ann. Regs. 114–4720, 114–4730 (Supp.2006).

## STANDARD OF REVIEW

In appeals from the family court, the appellate court has jurisdiction to find facts in accordance with its view of the preponderance of the evidence. *Strickland v. Strickland,* 375 S.C. 76, 82, 650 S.E.2d 465, 468 (2007). This broad scope of review, however, does not require the reviewing court to disregard the findings of the family court. *Id.*

## DISCUSSION

### I.

Father contends the Court of Appeals erred in affirming the family court's reduction of child support to the amount established by an application of Worksheet C of the Guidelines. If a modification of Mother's child support obligation was warranted, Father claims any calculation should have been made pursuant to Worksheet A in accordance with the parties' agreement.

A child support award rests in the discretion of the trial judge, and will not be altered on appeal absent abuse of discretion. *Hallums v. Hallums,* 296 S.C. 195, 197, 371 S.E.2d 525, 527 (1988).

"The family court may always modify child support upon a proper showing of a change in either the child's needs or the supporting parent's financial ability." *Upchurch v. Upchurch,* 367 S.C. 16, 26, 624 S.E.2d 643, 647–48 (2006); *Calvert v. Calvert,* 287 S.C. 130, 336 S.E.2d 884 (Ct.App.1985) (recognizing that a substantial or material change of circumstances must occur to warrant a modification of child support). "The party seeking the modification has the burden to show changed circumstances." *Upchurch,* 367 S.C. at 26, 624 S.E.2d at 648. "This burden is increased where the child support award is based on a settlement agreement." *Id.* "However, changes within the contemplation of the parties at the time of the initial decree are not sufficient bases for the modification of a child support award." *Id.* Moreover, "a reduction in child support cannot be based on a decrease in the noncustodial parent's income absent a strong showing by the latter that he or she can no longer make the support

payments required by the earlier order." *Townsend v. Townsend,* 356 S.C. 70, 73–74, 587 S.E.2d 118, 119–20 (Ct.App.2003).

As evidenced by the above-cited case law, an analysis of Mother's request for modification of a child support obligation involves two questions: (1) did Mother prove that a substantial or material change of circumstances occurred to justify a reduction; and (2) if a reduction was warranted, what method of calculation was appropriate?

■ We agree with the Court of Appeals that upon a finding of a substantial change in circumstances the family court judge has discretion to utilize any Worksheet he or she finds appropriate under the facts of the case. However, in the case *sub judice,* we disagree that a substantial change in circumstances warranting a change in support has occurred. We conclude that Mother failed to meet the heightened burden necessary to warrant a downward modification of her child support obligation.[7]

Initially, we find the Court of Appeals' reliance on *Rogers* was erroneous. In *Rogers,* Mother petitioned the family court for an increase in Father's child support obligation based on Father's increase in income. In contrast, Mother, in the instant case, petitioned the family court for a decrease in her child support obligation based on Father's increase in income. Because the Court of Appeals relied exclusively on *Rogers,* we believe the evident factual dissimilarities of this case undermine the Court of Appeals' decision to find a substantial change of circumstances.

Although the increase in Father's income is of some import, this factor alone did not warrant a downward modification of Mother's obligation absent a strong showing that she was incapable of meeting the initial agreed-upon amount of child support. *See Miller v. Miller,* 299 S.C. 307, 384 S.E.2d 715 (1989) (finding Father failed to establish substantial or material change of circumstances warranting modification of his child support obligation where Father's financial declaration did not

---

7. While we recognize the parties agreed to reduce Mother's child support obligation from $920 to $808 per month while the action was pending, we do not construe this voluntary modification as an explicit concession on the part of Father that a change of circumstances existed to warrant a permanent reduction.

show that he was incapable of paying the previously-ordered support even though his income had decreased, Mother's income had increased, and her expenses had decreased); *see also Penny v. Green,* 357 S.C. 583, 594 S.E.2d 171 (Ct.App. 2004) (finding decrease in Father's income from $140,000 to $120,000 was not sufficient to constitute a substantial change in circumstances to warrant a reduction of his child support obligation); *Kielar v. Kielar,* 311 S.C. 466, 429 S.E.2d 851 (Ct.App.1993) (concluding Father's involuntary resignation resulting in a salary decrease from $300,000 to $180,000 per year did not constitute a substantial change in circumstances given it did not impact on Father's standard of living or his ability to pay his support obligations); *Calvert,* 287 S.C. at 138, 336 S.E.2d at 888 (finding no substantial or material change of circumstances despite reduction in Father's income and stating "[t]he mere fact that a supporting spouse's salary or income has been reduced does not of itself require a reduction of either alimony or child support").

Based on the foregoing, Mother had to prove more than an increase in Father's income to warrant a downward modification of her child support obligation. Mother failed to do so given her income actually increased 18% since the 2000 order and, thus, she could not establish that she was incapable of meeting the initially agreed-upon child support obligation of $920 per month.

Furthermore, we find the other factors relied upon by the family court and the Courts of Appeals were within the contemplation of the parties at the time of the initial decree.

First, given the children's young ages at the time of the initial decree, we believe the parties would have foreseen the eventual elimination of the $544 child care expense used to calculate Mother's initial child support obligation. Moreover, Regulation 114–4720 points out that support payments are based on data reflecting the average cost of rearing a child to its age of majority. This Regulation also recognizes that this cost increases as the child's age increases. 27 S.C.Code Ann. Regs. 114–4720 (Supp.2006). Therefore, the reduction in child care cost is offset over time by the increase in cost associated with the needs of an aging or maturing child. Thus, it would

appear that a reduction in child care cost is expected and considered in the child support guidelines formulation.

Secondly, the overnight liberal visitation schedule did not change. Clearly, the parties could have conceived that additional expenses would arise during the children's extensive visits with Mother. *See Upchurch*, 367 S.C. at 26, 624 S.E.2d at 648 (stating "changes within the contemplation of the parties at the time of the initial decree are not sufficient bases for the modification of a child support award").

Accordingly, we hold Mother failed to meet her burden of proving a substantial or material change of circumstances justifying a modification of her agreed-upon child support obligation. Because a modification was not warranted, we need not address Father's issue regarding the recalculation of Mother's child support obligation. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (recognizing an appellate court need not address additional issues if the resolution of another issue is dispositive).

## II.

Finally, Father asserts this Court should reverse the decision of the Court of Appeals to affirm the family court's denial of Father's request for attorney's fees and costs.

Because we reverse the Court of Appeals on the child support issue, we also reverse and remand to the family court the issue regarding attorney's fees and costs. *See Sexton v. Sexton*, 310 S.C. 501, 503, 427 S.E.2d 665, 666 (1993) (reversing and remanding issue of attorney's fees for reconsideration when the substantive results achieved by trial counsel were reversed on appeal).

## CONCLUSION

We find Mother failed to satisfy her heightened burden of proving that a substantial or material change of circumstances existed to justify a modification of her agreed-upon child support obligation. Therefore, we reverse the decision of the Court of Appeals and remand this case to the family court for

a reconsideration of the issue concerning an award of attorney's fees and costs.

**REVERSED AND REMANDED.**

TOAL, C.J., WALLER, PLEICONES and KITTREDGE, JJ., concur.