720 S.E.2d 910

**Yancey ROOF, Respondent,**

v.

**Kenneth A. STEELE, Appellant.**

**No. 4921.**

Court of Appeals of South Carolina.

Heard Sept. 13, 2011.
Decided Dec. 14, 2011.
Rehearing Denied Jan. 27, 2012.

Max N. Pickelsimer, of Columbia, for Appellant.

Jean P. Derrick, of Lexington, for Respondent.

GEATHERS, J.

Kenneth A. Steele (Husband) appeals from the family court's order granting modification of alimony and attorney's fees to his former wife, Yancey Roof (Wife). Husband argues the family court erred in modifying alimony and awarding attorney's fees. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## FACTS/PROCEDURAL HISTORY

Husband and Wife married in 1993 and divorced in 2006. They have seventeen-year-old twins. The parties' Final Decree of Divorce (Decree) incorporated a prior agreement regarding alimony, division of real and personal property, transfer of funds to "equalize the division of marital property," and responsibility for payment of debts and attorney's fees.

Regarding alimony, the Decree required Husband to make permanent periodic payments of $300 per month and to pay Wife's health insurance premiums. As to the health insurance component of alimony, the Decree provided:

> E. [Husband] shall maintain health, dental and optical insurance on [Wife] through the group policy with his current employer so long as it is available to him. Any premium paid by [Husband] for [Wife's] health, dental and optical insurance shall be considered alimony, and shall be taxable as income to [Wife], and shall be deductible by [Husband]. Currently, the premium is $87.74.

The Decree stated the family court had "questioned the parties regarding their agreement, and their understanding of

its terms." Thereafter, based on the parties' testimony and evidence, the court made Findings of Fact and Conclusions of Law. With respect to the modification of alimony, the Decree stated:

8. [T]he parties further understand that issues of child custody, child support and visitation, as well as any future modification of alimony are reviewable by the Court based upon a showing of a substantial change of condition. The parties further understand that alimony may also be terminated as provided by law.

Before the parties' divorce in February 2006, Husband's employer, BlueCross BlueShield of South Carolina, confirmed that Husband could maintain Wife as a dependent on his health insurance policy following the divorce. At that time, Husband paid a monthly premium of $87.74 for Wife's insurance coverage.

In April 2008, however, Husband's employer notified employees that it would no longer provide former spouses with dependent coverage as of June 1, 2008. Upon termination of Wife's coverage, she would become eligible for nine months of comparable coverage under COBRA at a monthly premium of $462.60.

In May 2008, Wife filed a complaint seeking to modify alimony based upon the occurrence of "a substantial change in circumstances since the issuance of the Decree of Divorce." In her complaint, Wife explained that she had been diagnosed with multiple sclerosis in 2000; since then, she had required extensive health care services. Wife stated her health insurance coverage, then available through Husband's employer, would terminate on June 1, 2008. Thereafter, she would become eligible for COBRA coverage for nine months. After her COBRA eligibility terminated on February 27, 2009, Wife contended the only coverage available to her was through the South Carolina State Health Insurance Pool, "at a very substantial monthly premium." Wife asserted that following the parties' divorce, Husband's income has increased significantly, while her income has remained the same. Moreover, Wife contended Husband has acquired property, while she "has not acquired any further property, and has barely managed to make a living since the divorce." Wife asked the court to

grant pendente lite and permanent relief by modifying her alimony to include payment of COBRA premiums; payment of Insurance Pool premiums upon termination of COBRA eligibility; and payment of a portion of her uninsured medical expenses. Wife additionally asked the court to award her attorney's fees and costs.

In Husband's answer and counterclaim, he contended Wife's action was "without merit" because "the cancellation of [Wife's] coverage was anticipated at the time of the parties' divorce, and therefore does not constitute a substantial change of condition." Husband also requested attorney's fees and costs.

In June 2008, the family court conducted a hearing on Wife's request for pendente lite relief. Wife sought an order requiring Husband to pay the COBRA premium of $462.60 a month after her "regular dependent coverage is converted to COBRA coverage." The court's order stated: "The Court finds, and holds as a matter of law, that the terms of the Decree of Divorce already require [Husband] to pay this COBRA premium, to continue this BlueCross BlueShield coverage as long as it is available to [Wife]." The order stated all other issues would be decided at the final hearing on the merits.

Wife's COBRA coverage expired on March 1, 2009. Thereafter, Wife again petitioned the family court for pendente lite relief, seeking an order requiring Husband to pay her Insurance Pool premium of $1,193.93 per month. In May 2009, the court conducted a hearing on Wife's petition. Husband argued that under the express terms of the Decree, he had no obligation to pay Wife's Insurance Pool premium because the coverage was not offered by his employer. Husband contended the parties had contemplated "this lapse of coverage" at the time of their divorce, and he asserted that an "anticipated event does not constitute a change of circumstances." The court agreed that the Decree no longer obligated Husband to pay Wife's health insurance premiums: "The Court concurs in [Husband's] argument that the [Insurance Pool] coverage is not equal to the BlueCross BlueShield coverage or COBRA coverage, so [Husband] at present has no ongoing duty *per se* under the Decree." Yet, the court found that Wife has

demonstrated "a change of circumstances and is entitled to supplemental *pendente lite* relief, all without prejudice to the position of either party at a final hearing on the merits."

On February 4, 2010, the family court conducted a final hearing on the merits of Wife's request for modification of alimony and attorney's fees. At this hearing, Wife testified she was diagnosed with multiple sclerosis in 2000; she stated "it just varies day to day as how it affects me." Wife, who has a high school education, has worked since 1985 in a picture framing business, where she is a co-owner. In 2006, Wife was making $1,500 a month; she currently makes $1,080 a month and has taken out multiple loans to pay for her necessities. Wife testified that prior to the expiration of her COBRA benefits, she had requested quotes from several health insurance carriers; however, the carriers either denied coverage or offered policies that provided less coverage at a higher premium. As a result, Wife had determined the Insurance Pool, at a monthly premium of $1,247.65, provided the most economical coverage for her needs.

Husband testified he was making $60,000 in 2006; he currently makes $76,000 a year, and he owns a home, motorcycle, boat, truck, and four rental homes. Husband's mother died prior to the parties' divorce; subsequently, Husband inherited $260,000, from which he receives approximately $3,700 in annual interest. Husband also has a 401(K) account that is valued at $40,000. Husband testified the rental homes do not provide extra income to him because the rental income is used to make the mortgage payments.

Husband testified regarding his understanding of the Decree's alimony provision requiring him to pay Wife's health insurance premiums: "My understanding was that I would be required to cover her under my employer's plan as long as it was available and not after that. And, at the time, it was eighty-seven dollars a month." Husband later commented on the express wording of the health insurance provision: "The reason we put the wording in there the way it is in there is because to protect myself if I was, if the insurance was not available through my group plan."

Husband asserted: "I did what the [D]ecree said." He contends he is no longer responsible for paying Wife's health

insurance premiums because: "There is no change of circumstances. It's in the [D]ecree." Husband was asked if he had expected his employer to allow him to carry Wife as his dependent indefinitely; he responded: "No, I had no idea what the future would hold, and that's why we put the wording in there, to protect myself from exorbitant health insurance premiums in the future." Husband argued that he had done exactly what the Decree required and added: "I figured the agreement gave [Wife] ample time to get a parallel policy so she would still have insurance coverage. . . . We're divorced. She has family."

Husband's counsel argued the Decree "is clear and unambiguous":

[Husband's] obligation to provide health insurance through his employer is only so long as it's available to him through his current employer. That is the sole basis for the substantial change of circumstances that [Wife] has alleged in her complaint. We believe that . . . it's clear that a change of circumstances that's anticipated at the time of the decree cannot later be used as a change of circumstance to seek modification of that decree. . . . It's clear from [Wife's] testimony that she anticipated, she knew at the time of the decree that insurance may no longer be available to [Husband] at some point in time through his employer[,] be it through job transfer, job termination, [or] change of policy with BlueCross BlueShield.

Wife's counsel responded:

The agreement . . . does not speak to the future about what happens if and when that coverage changes. That's the meaning of change of circumstance. We can only agree on what we know to be the present circumstances. None of the parties or certainly the court could anticipate the development of future events and what would happen.

Wife's counsel concluded: "[W]e have an additional need of more premium for new insurance coverage, more alimony because of larger uncovered medical expenses."

The family court issued a final order granting Wife an increase in alimony based on its findings that she had demonstrated a substantial change in circumstances and that Hus-

band had the financial ability to pay increased alimony. The order stated:

> [Husband] at trial argued that since medical coverage was no longer available for him to carry for [Wife's] benefit through his place of employment, his obligation to maintain medical insurance coverage on her behalf was ended. However, this is not the express wording of the agreement of the parties. The Decree of Divorce is silent with respect to [Husband's] obligations, if any, when coverage is no longer available to him through his place of employment. In addition, even if the Court literally interpreted the agreement of the parties as [Husband] argues, [Wife] in this action in fact does not seek to compel [Husband] to maintain coverage, but rather requests an increase in alimony, due to her additional needs to maintain a more expensive policy of medical insurance coverage. In any event, the Court finds and concludes that [Wife] has shown, with respect to this issue, a change of condition concerning her needs for medical insurance coverage, and therefore proved her entitlement to an increased award of alimony.

The order additionally noted that Wife's continuing poor health, her decrease in income, and Husband's increase in income and assets supported modification of alimony. The court ordered Husband to pay Wife alimony equal to "the amount of her monthly [Insurance Pool] premium, in addition to the $300 per month alimony payment awarded earlier." The court stated the "amount of this insurance premium shall be treated as alimony." Furthermore, the court awarded Wife attorney's fees of $10,000. This appeal followed.

## ISSUES ON APPEAL

I.   Did the family court err in modifying alimony?

II.  Did the family court err in awarding attorney's fees to Wife?

## LAW/ANALYSIS

### I.  STANDARD OF REVIEW

On appeal from the family court, this court reviews factual and legal issues *de novo*. *Simmons v. Simmons*, 392

S.C. 412, 414, 709 S.E.2d 666, 667 (2011). "[O]ur review of a family court's order on whether to modify support awards is *de novo.*" *Miles v. Miles,* 393 S.C. 111, 117, 711 S.E.2d 880, 883 (2011). "[W]hile retaining the authority to make our own findings of fact, we recognize the superior position of the family court judge in making credibility determinations. Moreover, consistent with our constitutional authority for *de novo* review, an appellant is not relieved of his burden to demonstrate error in the family court's findings of fact." *Lewis v. Lewis,* 392 S.C. 381, 392, 709 S.E.2d 650, 655 (2011) (footnote omitted).

## II. MODIFICATION OF ALIMONY

### a. Alimony Is Modifiable

An agreement creating a spousal support obligation is modifiable by the family court unless (1) the parties have expressly designated their agreement as "non-modifiable," and (2) the family court has approved this limitation:

> The Family Court may review and approve all agreements which bear on the issue of alimony or separate maintenance and support, whether brought before the court in actions for divorce from the bonds of matrimony, separate maintenance and support actions, or in actions to approve agreement [sic] where the parties are living separate and apart.... The parties may agree in writing if properly approved by the court to make the payment of alimony ... nonmodifiable and not subject to subsequent modification by the court.

S.C.Code Ann. § 20–3–130(G) (Supp.2010).

In our case, the Decree deemed that Wife's health insurance premiums paid by Husband "shall be considered alimony." During oral argument, Husband acknowledged that his payments for Wife's health insurance premiums were alimony, and he conceded that alimony was modifiable by the court.

### b. Modification of Alimony Requires "Changed Circumstances"

▉ South Carolina law limits the modification of alimony to situations where "the circumstances of the parties or the financial ability of the spouse making the periodic payments shall have changed since the rendition of such judgment" of

divorce. S.C.Code Ann. § 20-3-170 (1976 & Supp.2010). The law grants great latitude to the family court to modify alimony by making "such order and judgment as justice and equity shall require, **with due regard to the changed circumstances and the financial ability of the supporting spouse,** decreasing or increasing or confirming the amount of alimony provided for in such original judgment or terminating such payments." *Id.* (emphasis added).

Our courts have further refined the conditions warranting modification of alimony to additionally require that a "substantial" change in circumstances has occurred since the parties' divorce. "The change in circumstances must be substantial or material in order to justify a modification of the previous alimony obligation."[1] *Thornton v. Thornton,* 328 S.C. 96, 111, 492 S.E.2d 86, 94 (1997). "In addition to the changed circumstances of the parties, the financial ability of the supporting spouse to pay is a specific factor to be considered." *Riggs v. Riggs,* 353 S.C. 230, 236, 578 S.E.2d 3, 6 (2003).

The Decree expressly stated that alimony could be modified by the court "upon a showing of substantial change in condition." Husband does not contest the court's authority to modify alimony; rather, he challenges the court's finding that the evidence presented demonstrates that the circumstances of the parties have substantially changed since the parties' divorce in 2006.

---

1. Prior to the supreme court's recent holding in *Miles v. Miles,* our courts had traditionally placed a higher burden on parties seeking modification of alimony when the alimony had been established by an agreement. 393 S.C. 111, 711 S.E.2d 880 (2011). However, in *Miles* the court stated it was disavowing "the line of cases that articulate an even higher burden on the party seeking modification when an agreement is involved." *Id.* at 120, 711 S.E.2d at 885. Furthermore, the court in *Miles* stated: "Today, we clarify that while the burden to prove entitlement to a modification of spousal or child support is a substantial one, the same burden applies whether the family court order in question emanated from an order following a contested hearing or a hearing to approve an agreement." 393 S.C. at 120-21, 711 S.E.2d at 885. Consequently, the *Miles* opinion "disavowed" the following cases: *Floyd v. Morgan,* 383 S.C. 469, 681 S.E.2d 570 (2009); *Upchurch v. Upchurch,* 367 S.C. 16, 624 S.E.2d 643 (2006); and *Townsend v. Townsend,* 356 S.C. 70, 587 S.E.2d 118 (Ct.App.2003). 393 S.C. at 120, 711 S.E.2d at 885.

Husband's argument relies on his contention that even if a substantial change in circumstances has occurred, the change was "anticipated" at the time of the parties' divorce. Husband asserts:

The requirement that a change in circumstances be unanticipated in order to justify modification of an alimony award is a long standing and well established rule of law dating back more than thirty years. *See Schadel v. Schadel,* 268 S.C. 50, 56, 232 S.E.2d 17, 19 (1977) (holding that husband was not entitled to modification of alimony, as his retirement from the Air Force was anticipated when he entered into the agreement with his former wife).

Husband contends modification of alimony is not warranted because Wife's loss of health insurance coverage under Husband's employer's plan was anticipated at the time of their divorce. Husband contends that because health insurance for Wife is no longer available through his employer, his only alimony obligation is the $300 monthly payment to Wife. Moreover, Husband contends the court is powerless to modify his future alimony obligation because the change in circumstances was precipitated by an anticipated event: "[B]ecause the discontinuation of insurance coverage in the future was a given, [Wife's] need to purchase new insurance cannot be considered a change in circumstances."

We agree that under the Decree, Husband is no longer responsible for paying Wife's health insurance premiums because coverage is no longer available through his employer. However, we disagree with Husband's contention that he has no further alimony obligation simply because the parties had anticipated that Wife could lose coverage.

The parties' arguments turn not on whether a "substantial change in circumstances has occurred," but instead on whether the law requires that the substantial change in circumstances had to be "unanticipated" at the time of the parties' divorce in order for the family court to consider modification of alimony. This very issue was addressed squarely, and answered clearly, by a unanimous supreme court in *Sharps v. Sharps,* 342 S.C. 71, 535 S.E.2d 913 (2000), *rev'g* Op. No. 99–UP–081 (Ct.App.1999).

In *Sharps,* the family court found a substantial change in circumstances occurred following the emancipation of the parties' children, and that the change warranted an increase in Wife's alimony from $150 to $475 a month. *Id.* at 74, 535 S.E.2d at 915. The family court based Wife's increase in alimony upon "the increase in Husband's income, a decrease in Husband's expenses, the increase in Wife's expenses, the thirteen-year length of the marriage, and their respective ages." *Id.* at 75, 535 S.E.2d at 915. Husband appealed the increase in alimony, and the court of appeals reversed, holding: "[T]he trial court improperly relied on the termination of child support to find a change in circumstances." *Id.* at 75, 535 S.E.2d at 915. The court of appeals also found "general inflation and Husband's increase in salary were not sufficient to warrant a modification of alimony." *Id.* at 75, 535 S.E.2d at 915.

The supreme court reversed the court of appeals' decision in *Sharps* and reinstated the family court's order increasing Wife's alimony. In the *Sharps* opinion, the supreme court admonished: "Using *Calvert,*[2] courts have refused to adjust alimony where the substantial change alleged was known by the parties at the time of the decree." 342 S.C. at 76, 535 S.E.2d at 916. The supreme court noted: "Prior to *Calvert,* the Court of Appeals even found the increase in expenses to the husband as a result of the wife's immediate relocation with her new spouse to Virginia could not be considered in determining whether a substantial change existed because the parties contemplated her move during the divorce." *Id.* at 76, 535 S.E.2d at 916.

The supreme court reasoned that there are some changes anticipated by parties at the time of divorce that cannot be adequately addressed by the Divorce Decree:

> In light of *Calvert* and subsequent Court of Appeals cases, courts usually consider only those changes that were unknown to the parties at the time of the separation decree in determining if a substantial change has occurred warranting a modification of alimony. The original divorce decree generally addresses these expected changes. However, there are some future changes which may be in contemplation of the parties at the time of the decree but, due to other

---

**2.** *Calvert v. Calvert,* 287 S.C. 130, 336 S.E.2d 884 (Ct.App.1985).

considerations, cannot be addressed at that time in the divorce decree.

The termination of child support in the current case is one situation where, even though the future event was known at the time of the separation, the trial court could not properly address that expected change in the divorce decree. Because a court cannot always know what conditions will exist in the future, it would be arbitrary to automatically increase alimony or child support in the far distant future based on the happening of anticipated events.

*Id.* at 76–77, 535 S.E.2d at 916. The supreme court further explained:

[I]f the original divorce decree had attempted to increase Wife's alimony following the emancipation of the children, the amount of that increase would have been arbitrary and unenforceable in light of the substantial amount of time between the original decree and the emancipation. Also, had the original decree in this case granted Wife a greater amount of periodic alimony, it may have unfairly exceeded Husband's financial ability to pay the child support, the alimony, and support himself as well.

*Id.* at 77–78, 535 S.E.2d at 917. The court additionally instructed: "As a general rule, a court hearing an application for a change in alimony should look not only to see if the substantial change was contemplated by the parties, **but most importantly whether the amount of alimony in the original decree reflects the expectation of that future occurrence.**" *Id.* at 78, 535 S.E.2d at 917 (emphasis added).[3]

In our case, Husband argues the family court erred in finding a substantial change in circumstances existed to

---

3. We believe that the court's precise guidance in *Sharps* concerning the analysis of whether a substantial change in circumstances warrants modification in alimony has not been overruled by subsequent cases that continue to refer to the substantial change in circumstances that warrants modification in alimony as "unanticipated," without further explanation of this factor. *See Miles v. Miles*, 393 S.C. 111, 120, 711 S.E.2d 880, 885 (2011) (citing *Butler v. Butler*, 385 S.C. 328, 336, 684 S.E.2d 191, 195 (Ct.App.2009)) (stating a party is entitled to modification of a support obligation if the party "can show an unanticipated substantial change in circumstances").

Furthermore, the facts here are distinguishable from the facts in *Floyd v. Morgan,* where the supreme court found a modification to Mother's child support obligation was not warranted where the pur-

support modification of the Decree because termination of Wife's health insurance was within the contemplation of the parties at the time of their divorce.[4] Guided by the clear analysis in *Sharps,* we conclude Wife is not barred from modification of alimony simply because the parties had anticipated that she may become ineligible—at some unknown point in the future—for health insurance coverage under Husband's employer's policy. Based on the applicable statute, and our supreme court's statutory interpretation, we hold the proper inquiry of the court when considering a request to modify alimony is whether "the circumstances of the parties or the financial ability of the spouse making the periodic payments shall have changed since the rendition of such judgment...." S.C.Code Ann. § 20–3–170.

Applying the instruction in *Sharps* to our case, the **amount of alimony in the original decree,** i.e., $300 per month, does not consider Wife's needs should she lose access to health insurance coverage. To the contrary, in light of Wife's significant chronic health problems, it is clear the Decree did not address Husband's responsibility should Wife lose coverage under Husband's employer's health insurance plan. The modest alimony award of $300 does not reflect the parties' future expectation that Wife would become responsible for obtaining her own health insurance coverage. Indeed, this interpretation is consistent with the testimony of both parties, who indicated that while they could not predict the future, they had "hoped" at the time of their divorce that Husband would be

---

ported changes in circumstances were within the parties' contemplation at the time of their initial divorce decree. 383 S.C. 469, 681 S.E.2d 570 (2009). In *Floyd,* the court stated: "[G]iven the children's young ages at the time of the initial decree, we believe the parties would have foreseen the eventual elimination of the $544 child care expense used to calculate Mother's initial child support obligation." *Id.* at 477, 681 S.E.2d at 574. By contrast, in this case, even if the parties were able to anticipate that Wife's health insurance might become unavailable in the future, the impact of that substantial change in circumstances could not have been both anticipated and quantified at the time of the parties' divorce.

4. Additionally, Husband contends the family court erred in denying his motion for involuntary non-suit, pursuant to Rule 41(b), SCRCP. Husband asserts Wife failed to present evidence of an unanticipated change of circumstances. Husband's argument is without merit.

able to continue providing Wife's health insurance through his current employer. The language in the Decree demonstrates the parties' realization that continuation of coverage was ultimately beyond their control. Importantly, the Decree remains silent as to what modification of alimony, if any, becomes warranted upon the change in circumstances that would necessarily follow Wife's loss of health insurance coverage.

We accept Husband's testimony that the language in the Decree was crafted carefully "to protect [him] from exorbitant health insurance premiums in the future." At the time of the parties' divorce, Wife's health insurance needs were met fully by Husband's employer and Husband's minimal premium payments of $87.74 per month. At that time, the Decree specified that Husband's alimony responsibility was comprised of monthly payments of $300 and payment of Wife's monthly health insurance premiums for as long as coverage was available through Husband's employer. As the family court's order noted: "The Decree is silent with respect to [Husband's] obligations, if any, when coverage is no longer available to him through his place of employment." Moreover, any attempt by the court in 2006 to quantify the financial impact to Wife of the potential loss in coverage in 2010—or beyond—simply would have been "arbitrary."

Now, four years later, coverage for Wife is no longer available through Husband's employer and premiums for comparable coverage have increased from $87.87 to $1,247.65 per month—an increase of over 1,000%. During the same period, Husband's monthly income has increased from $5,000 to $6,357.48, an increase of 27%, while Wife's income has decreased significantly.

We find that the family court's reliance on the cessation of Wife's health coverage through Husband's employer, combined with findings that Wife's income had decreased while Husband's income had increased, was sufficient to support a determination that Wife had successfully demonstrated a substantial change in circumstances that warranted an increase in alimony. Furthermore, we find the family court properly determined that Husband has the financial ability to provide additional alimony to Wife. These findings satisfy the statutory guidelines for alimony modification, as stated in § 20–3–170.

In our view, however, the family court's method of determining the amount to modify Wife's alimony was improper. While we agree that an increase in alimony is warranted, we do not believe the amount of the modification should be tied to the ever-changing market value of Wife's health insurance coverage—especially in light of Husband's valid argument that his obligation to pay Wife's health insurance premiums ended after coverage was no longer available through his employer. Our review of the court's pendente lite orders in this case demonstrates just how fluid such a basis for alimony modification becomes when tied to adjustments in Wife's health insurance premiums. Moreover, tethering the modification of alimony to an adjustment of insurance premiums provides a disincentive to Wife to control her health care costs.

Accordingly, we affirm the family court's determination that Wife demonstrated a substantial change in circumstances that warrants the modification of alimony; however, we reverse the family court's order requiring Husband to pay Wife's health insurance premiums. Instead, we remand the case to the family court to determine the appropriate monetary modification of alimony that reflects both the substantial change in the parties' circumstances and Husband's financial ability to pay alimony.[5]

### III. Attorney's Fees

Husband contends the family court erred in awarding attorney's fees of $10,000 to Wife.

In awarding attorney's fees, the court should consider each party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, and the effect of the fee on each party's standard of living. *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). In determining the amount of attorney's fees to award, the court should also consider the: (1) nature, extent, and difficulty of the case; (2) time necessarily devoted to the case; (3) professional standing of

5. Following oral arguments, Husband filed a Petition for a Writ of Supersedeas asking this court to stay any future determination by the family court that Husband was responsible for paying future increases in Wife's health premiums during the pendency of this appeal. Husband's Petition is now moot.

counsel; (4) contingency of compensation; (5) beneficial results obtained; [and] (6) customary legal fees for similar services. *Glasscock v. Glasscock,* 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

*Smith v. Smith,* 386 S.C. 251, 270, 687 S.E.2d 720, 730–31 (Ct.App.2009).

Because we have remanded the issue of modification of alimony to the family court, we remand the issue of attorney's fees as well. The outcome of the alimony modification may impact the family court's award of attorney's fees. *See Sexton v. Sexton,* 310 S.C. 501, 504, 427 S.E.2d 665, 666 (1993) (remanding issue of attorney's fees where beneficial results were reversed on appeal, and "express[ing] no opinion" on whether the original award of attorney's fees was appropriate); *Smith,* 386 S.C. at 271, 687 S.E.2d at 731 (stating that the family court's decision on remand may alter its "analysis of the 'beneficial results obtained at trial' ").

## CONCLUSION

Based on the foregoing, the decision of the family court is **AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

SHORT and WILLIAMS, JJ., concur.