594 S.E.2d 171

**LaRue D. PENNY, Jr., Respondent/Appellant,**

v.

**Sally Z. GREEN, f/k/a Sally Z. Penny, Appellant/Respondent.**

**No. 3754.**

Court of Appeals of South Carolina.

Heard Jan. 13, 2004.

Decided March 8, 2004.

586

Michael R. Ellisor, of Lexington, for appellant-respondent.

Cynthia Barrier Castengera, of Newland, N.C.; J. Mark Taylor and C. Vance Stricklin, Jr., both of West Columbia, for respondent-appellant.

HEARN, C.J.:

LaRue D. Penny, Jr. (Husband) and Sally Z. Green (Wife) both appeal from a family court order reducing Husband's child support and alimony obligations. Husband also appeals Wife's award of attorney's fees. We affirm in part, reverse in part, and remand.

## FACTS

Husband and Wife were divorced in February 1998. The family court judge adopted the parties' settlement agreement and ordered Husband to pay $2,750 per month in alimony until May 2002, with incremental decreases after that date. Husband was also ordered to pay $1,500 per month in child support until May 2002, with the amount decreasing to $1,000 per month after that date.

In 1999, between the divorce and the initiation of this action, Wife moved to Atlanta with the children. In the fall of 2000, Husband left his Columbia pediatric practice and moved to Atlanta, in part to be closer to his children. Another factor in his relocation was that Husband remarried and his current wife's two children also live near Atlanta.[1] Husband filed this action for a reduction in his support obligations, claiming his financial circumstances had changed significantly. Wife answered, denying Husband was entitled to a decrease, and

---

1. Husband's current wife, while living in Columbia, earned between $20,000 and $54,000 per year working as a registered nurse. For the purposes of this action, the parties stipulated that current wife's income would not be merged into Husband's; however, testimony of the indirect benefit of her financial contribution to Husband's household expenses was admitted.

requested an increase in alimony, admonishment of Husband for late support payments, enforcement of Husband's debt payment obligations under the divorce decree, and payment of attorney's fees and costs.

In the 1998 divorce proceeding approving the parties' agreement, Husband's sworn financial declaration stated his annual income was $140,000. In this action for a reduction, however, Husband claimed his income at the time of the divorce was actually $165,226. He testified that his new employment in Atlanta provided him with a minimum salary of $100,000, based on a three-day work week.

Following a merits hearing, the family court reduced Husband's alimony obligation to $2,000 per month and set his child support obligation at $1,206 per month.[2] The family court based its decision to grant Husband a reduction on Husband's decreased income, finding Husband had actually earned $168,996[3] at the time of the divorce and imputing a salary of $120,000 to Husband at the time of this action. The family court also awarded Wife the value of $24,627 in attorney's fees by directing Husband to pay $7,000 in addition to the offset credit from his support overage. Wife appeals both orders, arguing the family court erred in reducing Husband's support obligations. Husband appeals the final order, arguing the family court should have further reduced his support obligations and asserting that the court should have awarded him, not Wife, attorney's fees.

## STANDARD OF REVIEW

■ In appeals from the family court, this court has the authority to find the facts in accordance with its view of the preponderance of the evidence. *Rutherford v. Rutherford,* 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992). This broad scope of review does not, however, require this court to disregard the findings of the family court. *Stevenson v. Stevenson,* 276 S.C.

---

2. At the temporary hearing, the family court reduced Husband's child support obligation to $1,063 per month, and ordered Husband to pay Wife $2,500 in attorney's fees.

3. We acknowledge the slight discrepancy between Husband's testimony that his 1997 income was $165,226 and the family court's finding that Husband's income was $168,996, but view it as inconsequential.

475, 477, 279 S.E.2d 616, 617 (1981). Neither is the court required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson*, 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981).

## LAW/ANALYSIS

### I. Wife's appeal

 Wife argues the family court erred in reducing Husband's child support obligation at the temporary hearing and in reducing Husband's alimony and child support obligations at the final hearing. We agree.

 "Family courts are empowered to modify child support upon a proper showing of a change in either the child's needs or the supporting parent's financial ability." *Henderson v. Henderson*, 298 S.C. 190, 196, 379 S.E.2d 125, 129 (1989) (citation omitted); *see Stevenson*, 276 S.C. at 477, 279 S.E.2d at 617 (finding the issue of child support is subject to continuing review by the family court). "To warrant a modification in child support, the change of circumstances must be either substantial or material." *Fischbach v. Tuttle*, 302 S.C. 555, 557, 397 S.E.2d 773, 774 (Ct.App.1990).

 Similarly, to justify modification of an alimony award, the changes in circumstances must be substantial or material. *Thornton v. Thornton*, 328 S.C. 96, 111, 492 S.E.2d 86, 94 (1997); *see also* S.C.Code Ann. § 20-3-170 (1985) (stating that changed conditions may warrant a modification or termination of alimony). Further, the change in circumstances must be unanticipated. *Kelley v. Kelley*, 324 S.C. 481, 486, 477 S.E.2d 727, 729 (Ct.App.1996). Several considerations relevant to the initial determination of alimony may be applied in the modification context as well, including the parties' standard of living during the marriage, each party's earning capacity, and the supporting spouse's ability to continue to support the other spouse. *Id.*

We find Husband failed to show a substantial or material change in circumstances. The family court's decision to reduce Husband's support was ostensibly based on two reasons,

both of which we find to be erroneous. First, the family court found that Wife's income had increased at the time of the final hearing. At the time of the divorce, Wife's 1997 financial declaration stated her gross monthly income was $1,273, and, at the time of the present action, her 2001 financial declaration indicates monthly income of $2,269.92. It was error to base a reduction on this ground, however, because such a change was expected. By agreement of the parties, Husband's alimony payments were to be reduced over time, beginning only six months after the final order granting modification. Although the divorce decree does not explain the reason for the automatic decreases in Husband's support obligations, the record supports the family court's finding that they were in anticipation of Wife increasing her income. It thus was error for the family court judge to grant Husband a reduction on this basis. *See, e.g., Brown v. Brown,* 278 S.C. 43, 44, 292 S.E.2d 297, 297 (1982) (finding that while the wife's income increased since the divorce, this increase cannot be used to justify a reduction in alimony because it was contemplated by the parties at the time of the divorce).

The family court's second basis for reducing support was the Husband's reduction in reported income. We find, however, that Husband's reduced income failed to constitute a substantial change impacting his ability to pay the obligations to which he originally agreed. This conclusion is based on our review of the family court's analysis of the Husband's initial income, his current income, and his imputed income.

Financial declarations are sworn documents required by Rule 20 of the South Carolina Rules of Family Court. Here the family court, which approved the parties' agreement in February 1998, relied on Husband's representation of $140,000 in annual income, as reflected in his financial declaration. In this action for reduction, however, Husband testified his income in 1997 had been under-reported by him and that it was actually $165,226. The family court then utilized this inflated figure as support for its decision to reduce Husband's support obligation, finding that Husband's income had decreased substantially since the 1998 divorce. This was error.

■ A party cannot misrepresent income and expenses on a financial declaration for purposes of having an agreement

approved and then refute the accuracy of that document in a subsequent modification action. *See Rogers v. Rogers,* 343 S.C. 329, 332, 540 S.E.2d 840, 841 (2001) (relying on original financial declaration rather than other records indicating an increased income in evaluating change of circumstances); *see also Calvert v. Calvert,* 287 S.C. 130, 336 S.E.2d 884 (Ct.App. 1985) (concluding husband was barred by *res judicata* from subsequent challenge of cost of living index incorporated in divorce decree). Therefore, we find the family court erred in allowing Husband to contradict his previous financial declaration in an effort to demonstrate a larger disparity from his present income. It was error for the family court to utilize Husband's inflated income of $168,996 rather than relying on the figure of $140,000 reported in Husband's original financial declaration. We find the correct annual income to attribute to Husband for purposes of evaluating his claim of changed circumstance is $140,000, as reflected in his 1998 financial declaration.

Regarding Husband's current income, we believe the family court was correct in imputing to Husband an annual income of $120,000, rather than the $100,000 per year urged by Husband. Initially we note that Husband's purported salary with his new practice in Atlanta is based on a one-year contract that guarantees him a minimum of $100,000, based on a three-day work week.

Moreover, under the Child Support Guidelines, "income" is defined as "the actual gross income of the parent, if employed to full capacity, or potential income if unemployed or underemployed." 27 S.C.Code Ann. Regs. 114–4720(A)(1) (Supp.2002). The Guidelines provide further that "[i]n order to impute income to a parent who is unemployed or underemployed, the court should determine the employment potential and probable earnings level of the parent based on that parent's recent work history, occupational qualifications, and prevailing job opportunities and earning levels in the community." *Id.* at 114–4720(A)(5)(b). Where a parent voluntarily lessens his or her earning capacity, this court will closely scrutinize the facts to determine the parent's capacity to earn, rather than his or her actual earnings. *See Robinson v. Tyson,* 319 S.C. 360, 363, 461 S.E.2d 397, 399 (Ct.App.1995).

 We recognize that following the parties' divorce, Husband's medical practice underwent some detrimental financial changes. We agree with the family court's conclusion that Husband's salary in Columbia before he moved to Atlanta was roughly $120,000 per year. This conclusion is supported by Husband's 1999 W–2 indicating his salary was approximately $130,000, and his 2000 W–2 showing his salary at approximately $118,000. The family court correctly noted the recent reduction in Husband's salary was brought about by Husband's voluntary decision to leave his Columbia medical practice and move to Atlanta. We reiterate that Husband's purported $100,000 salary from his Atlanta medical practice is a guaranteed minimum salary and is achieved by working only three days per week. When a spouse voluntarily undertakes a move that will reduce his or her income, the family court may properly impute income to that spouse. *Id.* The family court's imputation of income to Husband was tantamount to finding Husband underemployed. As such, the court was justified in examining Husband's earning potential based upon recent work history and qualifications. Since Husband was earning approximately $120,000 before he voluntarily moved to Atlanta, the family court did not err in imputing that level of income to him. This is especially true considering Husband's current job in Atlanta seems to allow Husband the opportunity to work more hours and increase his annual salary.

Comparing Husband's initial income to the income properly imputed to him, Husband's annual salary has decreased from $140,000 to $120,000. We find this decrease is not significant enough to severely impact his standard of living or his ability to pay support obligations, particularly where that decrease is due to a voluntary relocation. *See Townsend v. Townsend,* 356 S.C. 70, 587 S.E.2d 118 (Ct.App.2003) (finding that husband's decrease in income from $250,000 to $186,000 per year without showing of inability to pay support obligations is not a substantial change in circumstances); *Kielar v. Kielar,* 311 S.C. 466, 429 S.E.2d 851 (Ct.App.1993) (stating that involuntary resignation resulting in a salary decrease from over $300,000 to roughly $180,000 per year did not amount to substantial change in circumstances because it had no impact on standard of living and ability to pay obligations). Because there was no substantial change in circumstances sufficient to

support a reduction of Husband's alimony and child support obligation, we find the family court erred in reducing Husband's support obligations. Accordingly, the family court's decision is reversed, and the parties' previous alimony and child support agreement as incorporated in the 1998 divorce decree is reinstated.

## II. Husband's appeal

### A. Alimony

Husband argues the family court erred in not further decreasing or terminating his alimony obligation. Husband also contends the family court erred in imputing to him a $120,000 annual income. We disagree.

As discussed above, we find the family court erred in reducing Husband's alimony obligation. Therefore, we cannot find, as Husband argues, that the court did not reduce his obligation *enough*. As also explained above, we believe the family court was correct in imputing to Husband an annual income of $120,000. Thus, we find no merit to either one of Husband's alleged errors regarding his support obligations.

### B. Attorney's fees

Husband argues the family court erred in failing to award attorney's fees in his favor. Further, Husband argues the family court erred in awarding attorney's fees to Wife. We disagree.

Before awarding attorney's fees, the family court should consider: (1) each party's ability to pay his or her own fee; (2) the beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) the effect of the attorney's fee on each party's standard of living. *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). An award of attorney's fees will not be overturned absent an abuse of discretion. *Stevenson v. Stevenson*, 295 S.C. 412, 415, 368 S.E.2d 901, 903 (1988).

We find the family court was correct in granting attorney's fees to Wife and not to Husband. Though Wife's annual income has nearly doubled since the parties' divorce in 1997, Husband has a much greater earning potential as a pediatri-

594

cian. As such, Husband is clearly more able to pay both his own attorney's fees and those accrued by Wife. Along those lines, Husband's standard of living will be better able to absorb the fees in view of his income. Finally and most importantly, Wife has now prevailed in the Husband's attempt to alter the support obligations. Accordingly, the family court judge did not err in awarding attorney's fees to her.

## CONCLUSION

The family court's temporary and final orders decreasing Husband's child support and alimony obligations based on change of circumstances are reversed, thereby reinstating the alimony and child support plan outlined in the divorce decree of February 6, 1998. We remand this matter to the family court for a determination of alimony and child support arrearages. The award of attorney's fees to Wife is affirmed.

**AFFIRMED IN PART, REVERSED IN PART, and RE-MANDED.**

HOWARD and KITTREDGE, JJ., concur.