684 S.E.2d 191
**William M. BUTLER, Appellant,**
v.
**Lynn M. BUTLER, Respondent.**
No. 4577.
Court of Appeals of South Carolina.
Heard March 18, 2009.
Decided Aug. 19, 2009.

330

John O. McDougall, Peter G. Currence, and Robert L. Widener, all of Columbia, for Appellant.

Regina H. Lewis and Victoria L. Eslinger, both of Columbia, for Respondent.

LOCKEMY, J.

In this domestic action, William M. Butler (Husband) appeals from an order of the family court reducing Lynn M. Butler's (Wife) monthly alimony. We affirm in part and remand in part.

## FACTS/PROCEDURAL BACKGROUND

Husband and Wife were married on September 26, 1970, and had two children. After one year's continuous separation in 1996, the family court approved an agreement entered into by Husband and Wife. Under the terms of their agreement, Husband agreed to pay Wife $7,500 per month in "permanent modifiable periodic alimony." A provision in their agreement stated: "Both parties acknowledge that under the law spousal support rights and responsibilities are subject to modification/termination based upon the laws of the State of South Carolina, including termination upon death of either party and remarriage of Wife." To secure his obligation to pay Wife alimony, the agreement required Husband to secure "no less than $650,000 of life insurance on Husband's life."

On June 17, 2002, Husband petitioned the family court to terminate or reduce his permanent, periodic alimony obligation and his life insurance obligation based on a substantial change in circumstances. Additionally, Husband requested reasonable attorney's fees and costs. In his complaint, Husband maintained Wife had inherited or was going to inherit substantial amounts of monies and other assets as a result of her mother's death. Subsequently, Husband amended his

complaint on January 25, 2005, and made many of the same allegations. Additionally, Husband argued Wife had received or would receive substantial amounts of monies or assets as a result of her Father's death. He also requested the family court retroactively terminate his alimony obligation to June 17, 2002, the date of Husband's original complaint.

The parties proceeded to trial and presented testimony regarding their current financial situations. It became clear that Wife had inherited an interest in her mother's estate after her mother's death on April 5, 2002. Wife testified that her Brother was the executor of the estate. The record and testimony contain allegations that Brother was, and possibly still is, mishandling the estate and possibly acting fraudulently as executor. However, Brother denies the allegations. Husband and Wife presented testimony regarding Wife's interest in her mother's estate and their current financial situations.

After finding Wife's net worth had changed based on the increased value in the assets she received as her share of the marital estate and the assets she inherited from her Father, rather than her Mother, the family court reduced Husband's alimony payment by $2,500. Specifically, the family court based its decision on Wife's "inherited assets, the $1,500 per month she receives there[ ]from, and appreciation of her equitable distribution assets...." The family court found it was without jurisdiction to modify the divorce agreement requiring Husband maintain $650,000 in life insurance with Wife as beneficiary because their initial divorce agreement was "nonmodifiable." Additionally, the family court awarded Husband $40,000 for his attorney's fees and costs. The family court stated the award was based primarily on attorney's fees and costs Husband incurred regarding discovery issues. Finally, the family court found alimony should be retroactive to the date of the filing of the amended complaint, January 25, 2005. Thus, the family court required Wife repay Husband approximately $22,500 by June 30, 2006, based on his "overpayment." However, in the same order, the family court ordered "Wife reimburse Husband $22,500 for the alimony he has paid her for the months June 1, 2005 through February 1, 2006, and that the $22,500 be paid on or before June 30, 2006."

After the family court issued its August 17, 2006 order reducing alimony, Husband filed a motion for reconsideration pursuant to Rules 52 and 59, SCRCP, and Rule 2(a), SCRFC. In his motion, Husband alleged the family court: 1) erred in refusing to terminate or alternatively reduce alimony; 2) erred in refusing to make the reduction in alimony retroactive to the date of the initial filing of the action to modify alimony; 3) erred in failing to award the Husband more fees and costs; and 4) erred in refusing to eliminate or further reduce the requirement of life insurance for alimony payments. Additionally, Husband requested the family court detail its consideration of the Wife's usufruct interest. The family court denied Husband's motion to reconsider. This appeal followed.

## STANDARD OF REVIEW

When reviewing decisions from the family court, this court has jurisdiction to correct errors of law and find facts in accordance with its own view of the preponderance of the evidence. *Semken v. Semken*, 379 S.C. 71, 75, 664 S.E.2d 493, 496 (Ct.App.2008). Although this court may find facts in accordance with our own view of the preponderance of the evidence, we are not required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Marquez v. Caudill*, 376 S.C. 229, 239, 656 S.E.2d 737, 742 (2008). However, "[q]uestions concerning alimony rest with the sound discretion of the [family] court, whose conclusions will not be disturbed absent a showing of abuse of discretion." *Kelley v. Kelley*, 324 S.C. 481, 485, 477 S.E.2d 727, 729 (Ct.App.1996).

## ARGUMENTS/ANALYSIS

### I. Failure to Terminate or Further Reduce Alimony

Husband argues the family court erred in failing to terminate alimony. Alternatively, Husband contends the family court erred in failing to further reduce alimony. In support of his assertion, Husband notes six "fundamental errors" of the family court and discusses each error in turn. Husband contends these errors viewed alone or cumulatively warrant

termination of alimony or reversal and remand for a further reduction of alimony. We disagree.

## A. Wife's Usufruct Inheritance

■ Husband and Wife agree Wife inherited an undivided, one-third interest in her mother's estate. Specifically, Wife inherited a "usufruct" interest in her mother's estate, which is a term of art under Louisiana law describing a type of interest in property. The interest is similar to the common law "life estate." Based on this inheritance, Husband contends Wife could use the income from her usufruct interest to become self-supporting; thus, the family court erred in failing to terminate his alimony payments or alternatively further reduce the payments.

■ Permanent, periodic alimony is a substitute for support which is normally incidental to the marital relationship. *Johnson v. Johnson*, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct.App.1988). Generally, the purpose of alimony is to place the supported spouse, to the extent possible, in the position she enjoyed during the marriage. *Allen v. Allen*, 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct.App.2001). However, upon a change in circumstances, the family court may modify an alimony obligation. *See Miles v. Miles*, 355 S.C. 511, 516, 586 S.E.2d 136, 139 (Ct.App.2003). Changes in circumstances must be substantial or material to justify modification or termination of an alimony award. *Id.* at 519, 586 S.E.2d at 140. Moreover, the change in circumstances must be unanticipated. *Penny v. Green*, 357 S.C. 583, 589, 594 S.E.2d 171, 174 (Ct.App.2004). "The party seeking modification has the burden to show by a preponderance of the evidence that the unforeseen change has occurred." *Kelley v. Kelley*, 324 S.C. 481, 486, 477 S.E.2d 727, 729 (Ct.App.1996).

In his motion for reconsideration, Husband asked the family court to detail its consideration of Wife's usufruct interest. In response, the family court acknowledged Wife's entitlement to a usufruct interest in her Mother's estate and asserted it "expressly considered the usufruct interest in assessing the value of [Wife's] assets." Further, the family court stated it considered that Wife "is *not* entitled to the principal *and* interest on the usufruct, but could only be granted either the

principal or the interest in the sole discretion of the Personal Representative." Moreover, the family court reiterated a statement from its first order in the present action by stating: "[i]t is also uncontroverted that [Wife] has yet to receive any of that money."

After reviewing the record, it remains unclear whether Mother's estate is producing income. If earnings are coming in, it is speculative as to what the actual earnings are. Husband's expert, Max Nathan, testified Wife was entitled to income on an ongoing basis. Though Nathan attempted to value Wife's interest in the estate, he did not testify as to the value of the estate's earnings. Without stating any numbers, Nathan mentioned estate property in his testimony and stated: "It's rented and it's got a lease ... It's been collecting rents, and she should be getting those rents." Accordingly, it would be mere speculation for any party to assign value to the estate's earning potential at this point.

In considering this appeal, we note with interest that Wife has not yet received any money from the usufruct inheritance. Wife testified she had made efforts to obtain the earnings she is entitled to from her Mother's estate. Specifically, Wife testified: "I have asked my [B]rother repeatedly [about the earnings]. He has been very evasive about it ... He has not been forthcoming, and I have—I tried everything." Additionally, Wife testified her Brother told her "there was nothing there." Patrice Viton, one of Husband's experts, also indicated Wife had not received any earnings from her usufruct interest. Additionally, a portion of Wife's Brother's deposition was read into evidence during trial proceedings. Wife's Brother replied "That's correct" when asked: "You advised that no assets had been distributed to [Wife] from her Mother's estate; is that correct?"

We recognize the family court reduced Husband's alimony obligation based on the inheritance she received from her Father. However, at this point in our review of the family court's decision, we are concerned only with whether Wife experienced a substantial or material change in circumstances based on the inheritance she received from her Mother. As noted above, Husband did not demonstrate that Wife received any proceeds from the usufruct trust. Further, it is a matter

of debate as to when or whether Wife will ever receive proceeds. Not only do we find Wife's circumstances unchanged, but we believe at the time of the family court's decision Wife had not experienced a substantial or material change in circumstances with regards to her interest in her Mother's estate. Therefore, Husband failed to meet his burden under *Miles v. Miles,* 355 S.C. 511, 519, 586 S.E.2d 136, 140 (Ct.App.2003) (requiring changes in circumstances must be substantial or material to justify modification or termination of an alimony award). Accordingly, we affirm the family court's decision based on Wife's unchanged circumstances.[1]

### B. Husband's Ability to Pay

■■■ Husband maintains the family court referred to and relied upon his ability to pay in refusing to terminate alimony when his ability to pay was never an issue in the case. Instead, Husband argues: "the only issue was whether Wife needed alimony to maintain the marital standard of living." Additionally, Husband contends his ability to pay alimony is "not a consideration unless and until the court determines that Wife needs alimony." We disagree and find the family court did not err in considering his ability to pay in making its decision.

■■■ "Many of the same considerations relevant to the initial setting of an alimony award may be applied in the modification context as well, including the parties' standard of living during the marriage, each party's earning capacity, and the supporting spouse's ability to continue to support the other spouse." *Miles,* 355 S.C. at 519, 586 S.E.2d at 140. Per statute, the complete list of factors the family court can consider in setting alimony include: (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history

---

1. Although Husband cited *Sharps v. Sharps,* 342 S.C. 71, 535 S.E.2d 913 (2000), for the proposition that in considering requests to modify alimony, the family court should consider not only whether the alleged change was contemplated but also whether the original alimony award reflected the expectation of that future occurrence. However, we need not reach this question because Wife has not experienced a substantial change in circumstances at this time.

and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses and needs of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; and (12) prior support obligations; as well as other factors the court considers relevant. S.C.Code Ann. § 20–3–130(C) (Supp.2008). Therefore, the family court did not err in considering Husband's continued ability to pay alimony as one factor in its decision pursuant to *Miles* and section 20–3–130(C)(4), (6), and (8) of the South Carolina Code.

### C. Wife's Extinguished Expenses

■ Husband contends the family court improperly calculated his new alimony obligation by subtracting Wife's total monthly expenses from her total monthly income. Husband maintains this "simplistic approach" overlooked Wife's reduction in expenses since their divorce agreement, Wife's improper expenses for alimony purposes, and her substantial assets. We disagree.

Husband maintains many of Wife's expenses at the time of their divorce no longer exist. Specifically, Husband maintains Wife no longer has a mortgage payment, a North Carolina property expense, or child support expenses. In its order the family court found Wife's satisfaction of her mortgage obligation was "certainly anticipated by the parties at the time of the divorce ..." We agree and also believe termination of Wife's child support obligation and North Carolina property expenses were in the parties' contemplation when they divorced. Based on this contemplation, we find the family court did not err in refusing to terminate or further reduce Husband's alimony obligation based on Wife's reduction in expenses. *See Penny v. Green*, 357 S.C. at 589, 594 S.E.2d at 174 (requiring the change in circumstances be unanticipated). Therefore, the family court properly considered the expenses and assets of each party in setting Husband's reduced alimony payment of $5,000 per month.

### D. Wife's Improper Expenses and Frugal Lifestyle

Husband contends Wife's monthly expenses are excessive in different sections of his brief. We consolidated his assertions regarding Wife's expenses here. Under "Wife's Expenses," Husband argues the family court erred in calculating his new alimony obligation by considering improper expenses of Wife for financial declaration purposes. Later, under "Wife's Frugal Lifestyle," Husband maintains Wife does not live a "frugal" lifestyle, and Wife should not be allowed to use alimony to avoid becoming self-sufficient, especially in light of her net worth. Specifically, Husband maintains he should not be responsible for several of Wife's expenses including charitable donations, contributions to their son's medical school tuition, fresh flowers and houseplants, household maintenance, and major home repairs. We disagree.

Frugal or not, Wife is entitled to support which is normally incident to the marital relationship. *Johnson v. Johnson*, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct.App.1988) ("Alimony is a substitute for the support which is normally incident to the marital relationship."). In this regard, Wife testified she and Husband "always had a history of donations," and "that has been our history, and I continue to do that." Furthermore, Wife testified she and Husband "had a history of helping our children" and that she "wanted [their son] not to have debt when he graduated." Based on Wife's testimony and other financial considerations, we find the family court did not err in taking Wife's expenses into account in setting the current alimony obligation.

In regards to Wife's other expenses, including fresh flowers and plants, and household maintenance, we do not believe Wife's 2005 financial declaration expenses significantly differ from Wife's initial financial declaration expenses. In 1995, Wife anticipated spending $1,485 in "maintenance," while she estimated spending $1,793.88 in "maintenance" in her 2005 financial declaration. Furthermore, many of the same categories listed in her initial declaration appear again in her 2005 declaration. Accordingly, we find Husband and Wife anticipated his alimony obligation would go toward many of these "maintenance" items. We also note Wife listed fresh flowers and plants in her 1995 financial declaration as well as house

painting, maid service, yard maintenance, tennis, cosmetics, jewelry, donations, expenses for her two sons, and more. Based on Wife's detailed list of expenses, and her candidness regarding them, again we find Husband anticipated having to continue paying such expenses. Furthermore, though Husband argues many of these expenses are "not the stuff of alimony," such an assertion is untrue when the parties established a certain standard of living during their marriage. *Hawley v. Hawley*, 363 S.C. 318, 323, 610 S.E.2d 309, 312 (Ct.App.2005) ("Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage.") (internal citation omitted). Accordingly, we find the family court did not err in calculating Husband's new alimony obligation by considering Wife's current expenses for financial declaration purposes.

### E. Financial Declarations of Wife and Net Worth

Finally, Husband maintains the family court relied on incorrect financial declarations of Wife. Specifically, Husband contends the family court found Wife's net worth was $4.3 million, when Wife's actual net worth was $4.7 million. Husband further discusses Wife's net worth and asserts simply that Wife is rich, and she could support herself for the rest of her life with more than $3 million of 'available' net worth." Though we note Wife and Husband both have substantial assets, we disagree with Husband's assertion that she should be required to exhaust her net worth so he no longer has to pay alimony.

It is undisputed that Husband and Wife have substantial assets. In its order, the family court found "[Wife] is not required to exhaust her assets over the course of her lifetime to maintain her standard of living so that [Husband] can reduce his alimony payments." Further, the family court found Wife believed and practiced never to invade principal. Finally, the family court held: "[Wife] has invested her assets conservatively and that she has followed the same investment practice of conservative investment which she learned from her father and which she and [Husband] continued during the course of their marriage and continue today."

We agree with the family court that Wife should not be required to change investment strategies or invade her principal so Husband can terminate or further reduce his alimony payments. First, the parties anticipated the other's net worth would grow over time. *Penny v. Green,* 357 S.C. at 589, 594 S.E.2d at 174 (finding change in circumstances must be unanticipated to warrant reduction in alimony). Second, Wife should enjoy a position similar to the one she enjoyed when she was married. *Hawley v. Hawley,* 363 S.C. 318, 323, 610 S.E.2d 309, 312 (Ct.App.2005) (explaining alimony should place the supported spouse in the same position enjoyed during the marriage). In that regard, Wife should not have to exhaust resources or change long-held investment beliefs. Accordingly, we affirm the family court's decision on this issue.

## II. Relate Back Date

■ Husband argues the family court erred in refusing to make the reimbursement of alimony relate back to the date of the filing of the action. We agree.

The family court found alimony should be retroactive to the date of the filing of the amended complaint, January 25, 2005. Thus, the family court required Wife repay Husband approximately $22,500 by June 30, 2006 based on his overpayment. However, later in the same order, the family court ordered Wife reimburse Husband $22,500 for the alimony he has paid her for the months June 1, 2005 through February 1, 2006, and that the $22,500 be paid on or before June 30, 2006. In oral argument, both sides stated it was unclear how the family court determined Husband's retroactive alimony obligation. We believe the family court made an error regarding the retroactive date of alimony and in its calculation of Wife's reimbursement obligation to Husband based on his initial filing date and his amended filing date.

Husband filed his initial complaint in the present action on June 17, 2002. Subsequently, Husband amended his complaint on January 25, 2005. Therefore, it is unclear why the family court required Wife to reimburse Husband for his overpayment from June 1, 2005 through February 1, 2006. We remand this issue to the family court for clarification and a recalculation of an amount relating back to Husband's initial

filing in June of 2002, or his amended filing date of January 25, 2005.

### III. Other Issues on Appeal

■■■ Husband argues the family court erred in refusing to terminate or proportionately reduce his obligation to maintain life insurance to secure his alimony obligations. Later, in separate arguments, Husband maintains the family court erred in refusing to order Wife to pay all fees and costs related to her obstructive discovery tactics. Additionally, Husband argues the family court erred in refusing to order Wife to pay "ordinary" fees and costs Husband incurred by successfully litigating this case. These issues are abandoned on appeal. Husband cited no statute, rule, or case in support of these arguments in either his argument section or his "Background Legal Principles" section. Furthermore, he makes conclusory statements without supporting authority. Therefore, we decline to address these issues on the merits. *Bryson v. Bryson*, 378 S.C. 502, 510, 662 S.E.2d 611, 615 (Ct.App.2008) ("An issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority."); *see also Glasscock, Inc. v. U.S. Fidelity & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct.App.2001) ("[S]hort, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review.").

### CONCLUSION

We find the family court did not err in refusing to terminate or alternatively reduce Husband's alimony obligations based on changed circumstances. However, we believe the family court erred in calculating Wife's reimbursement obligation to Husband; accordingly, we remand this issue back to the family court for a recalculation setting forth the appropriate dates and amounts with specific findings of facts and conclusions of law. All other issues raised to this court are abandoned on appeal. The decision of the family court is therefore

**AFFIRMED IN PART AND REMANDED IN PART.**

HUFF and THOMAS, JJ., concur.