**`THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Mitchell D. Goldman, Appellant,

v.

Jane Goldman, Respondent.

Appellate Case No. 2018-000958

Appeal From Dorchester County
Anne Gue Jones, Family Court Judge

Unpublished Opinion No. 2021-UP-014
Submitted December 1, 2020 – Filed January 20, 2021

**AFFIRMED**

Kenneth Eldon Peck, of The Peck Law Firm, L.L.C., of Mount Pleasant, for Appellant.

Sabrina R. Grogan, of Sabrina R. Grogan, Attorney at Law, of Mt. Pleasant, and Kevin Roger Eberle, of Charleston, both for Respondent.

**PER CURIAM:** Mitchell Goldman (Husband) appeals the family court's final order, reducing his alimony payment to Jane Goldman (Wife) from $4,750 to $1,500 per month and ordering him to pay Wife attorney's fees and expert witness fees. On appeal, Husband argues the family court erred in (1) awarding Wife attorney's fees

and expert fees because she did not receive a beneficial result and is in a better financial position than Husband; (2) not awarding him attorney's fees when he received a more favorable result than Wife; (3) not making the alimony reduction retroactive; and (4) only reducing Husband's alimony payment to $1,500 per month instead of terminating it or further reducing it based on the decrease in his income and the increase of Wife's income.  We affirm.

## I.    FACTS

The parties divorced in 2004 after twenty-seven years of marriage.  Husband enjoyed a long career as a medical doctor, while Wife was a homemaker and stay-at-home mother.  Pursuant to the parties' court-approved agreement, Husband agreed to pay Wife $5,500 in monthly, permanent periodic alimony.  Wife reentered the workforce at the age of fifty-four shortly before the parties' divorce.  Since 2005, she has worked for the South Carolina Department of Juvenile Justice as a social worker.  In 2007, Husband filed an action to reduce or terminate his monthly alimony payment, and in 2009, pursuant to an agreement reached by the parties, the family court issued a final order reducing Husband's alimony payment to $4,750 per month but providing Husband could not seek to modify this alimony obligation until he turned sixty-six.  At the time of the alimony adjustment, Wife made $36,348 per year, and Husband made at least $350,000 per year.

On December 28, 2016, anticipating his retirement and months before his sixty-sixth birthday, Husband filed this action requesting to terminate or reduce his alimony obligation.  Wife answered, asking the court to dismiss Husband's complaint and to award her attorney's fees and costs.  However, Wife stipulated that Husband had reached retirement age and his retirement was appropriate.  The parties were unable to reach a settlement and proceeded to trial.  The evidence showed (1) Husband worked until his retirement in September 2017, making at least $350,000 per year since 2009 and $456,043 in 2015; (2) at the time of trial, Wife still worked as a social worker, earning $42,285 per year; (3) due to Husband's retirement, he only had $3,587.40 in gross monthly income from retirement, social security, dividends, and rental income, and he had monthly expenses of $6,552.39, not including his alimony obligation but including over $2,000 in life insurance premiums on policies held for his current wife's benefit; (4) Wife's gross monthly income was $4,853.82 from her employment, social security, and dividends, and Wife had monthly expenses of $4,217.51; (5) Husband had over $375,000 in retirement and investment accounts, he used $172,000 he received for the sale of his portion of a medical practice to pay off the mortgage on his home and the rental home he owns, and he had ownership interests in three pieces of real property valued at $519,000; and (6) Wife had

$212,000 in a retirement account, she contributed $2,000 a month to her retirement account based on a financial planner's advice, and she still had mortgage, car, and other unsecured debt payments. Husband testified he never intended to pay Wife alimony forever, he "always meant that it would go away after [he] retired," and he believed the fair thing would be to terminate his alimony obligation.

The family court found Husband's retirement was "a substantial change in circumstances warranting a reduction in his alimony obligation" but did not warrant ending his alimony obligation. The family court therefore decreased Husband's alimony obligation to $1,500 per month. The family court further found Wife could not pay her attorney's fees without dipping into her retirement funds; Husband was in a better financial position than Wife; and Wife received beneficial results because although Husband received a reduction in his alimony obligation, he sought a complete termination of alimony. Thus, the family court found Wife was entitled to attorney's fees and costs, but "since both parties have received some beneficial results, [Wife was] not entitled to have all of her attorney's fees paid by [Husband]." The family court ordered Husband to pay Wife's attorney's fees in the amount of $25,000—out of a total $33,854.04 in attorney's fees she incurred—and $4,000 in expert fees, for a total of $29,000. This appeal follows.

## II.   STANDARD OF REVIEW

Generally, on appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385–86, 709 S.E.2d at 651–52. Additionally, appellate courts review the "family court's evidentiary or procedural rulings . . . using an abuse of discretion standard." *Stoney v. Stoney*, 422 S.C. 593, 594 n.2, 813 S.E.2d 486, 486 n.2 (2018).

## III.   ATTORNEY'S FEES

Husband argues the family court erred in awarding Wife attorney's and expert witness fees and not awarding him attorney's fees because (1) due to his retirement, Wife's income exceeds his, and she has substantial retirement savings; (2) he received the beneficial result in the case because his alimony obligation was significantly reduced, and Wife did not receive the relief she requested, namely the dismissal of his claims; (3) Wife "is in an equal or superior financial position" to Husband as she "has disposable income each month," while he runs a deficit, and

the assets attributed to him are shared jointly with his new wife; and (4) Wife's standard of living would not be impacted by paying her own fees and costs because she has disposable monthly income and has accumulated a "windfall created by the alimony payment[s]" since the entry of the family court order. We disagree.

The family court did not err in awarding Wife attorney's and expert witness fees and not awarding such fees to Husband. *See Couch v. Couch*, 431 S.C. 170, 180, 847 S.E.2d 260, 265 (Ct. App. 2020) (providing to determine whether an attorney's fee should be awarded, the family court should consider: "(1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; (4) effect of the attorney's fee on each party's standard of living." (quoting *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992))). First, the evidence shows Wife does not have an ability to pay her own attorney's fees as (1) her total attorney's fees of $33,854.04 amounts to over three-fourths of her yearly salary of $42,285; (2) she testified paying her attorney's fees would be an "incredible hardship"; and (3) she already has over $130,000 in debt, including a mortgage on her home. Husband, on the other hand, is better able to pay his own attorney's fees as he only has a minor debt of $1,200 to Home Depot; he has more money in retirement and investment accounts than Wife—$375,000 compared to $212,000; he does not have a mortgage on his home or rental home; he can bring in money by renting out his rental home at market rates; and he has interests in other property. *See McMurtrey v. McMurtrey*, 272 S.C. 118, 121, 249 S.E.2d 503, 505 (1978) ("There is no limitation that alimony payments be made solely from current earnings."). Husband testified he would have to start depleting his retirement account to pay alimony to Wife. That may be true, but based on his real estate holdings and retirement and investment accounts, he is still better able to pay attorney's fees than Wife. Thus, as to the parties' ability to pay attorney's fees, we find this factor weighs in Wife's favor.

Second, as to who received the beneficial outcome in this case, we note in his complaint, Husband asked for his alimony obligation to be terminated or reduced, and his alimony obligation was greatly reduced from $4,750 to $1,500. In this sense, Husband received a beneficial result. However, we acknowledge Husband offered Wife several, less lucrative settlement offers than the result reached by the family court; Wife made a settlement offer to Husband that included Husband paying her $1,500 per month in alimony, the amount ultimately ordered by the court[1]; and

---

[1] We acknowledge, however, that Wife's offer also provided Husband could not later seek to modify this alimony amount and that he would procure a life insurance policy in Wife's benefit, and the family court's order did not include these provisions.

Husband testified he never planned to pay Wife alimony after he retired, and he thought paying Wife nothing would be the fair amount of alimony. Thus, Wife received a beneficial outcome because Husband's alimony obligation was not fully terminated, and the amount of his modified alimony obligation is what she offered him in a settlement offer. Furthermore, we note Husband, not Wife, appealed the family's court's alimony order, asking this court to terminate or further reduce his alimony obligation. *See Taylor v. Taylor*, 333 S.C. 209, 218, 508 S.E.2d 50, 55 (Ct. App. 1998) (finding it "questionable" whether Husband succeeded in an action to terminate or, in the alternative reduce, his alimony obligation where Husband's alimony was reduced but not terminated and he appealed from that judgement). Therefore, although Husband may have succeeded in some sense, we find this factor weighs in Wife's favor.

Third, as noted above, Husband appears to be in a better financial situation than Wife as he (1) unlike Wife, has no mortgage payment, (2) has substantially more money in retirement and investment accounts than Wife, and (3) has no major debt. Although we acknowledge Wife is still working and brings in more income than Husband now that he has retired, this is not determinative of whether Wife should receive attorney's fees and costs or not. *See Fitzwater v. Fitzwater*, 396 S.C. 361, 372, 721 S.E.2d 7, 13 (Ct. App. 2011) (finding the family court did not err in awarding husband attorney's fees and costs even though husband's income was higher than wife's). Moreover, Husband still has a gross monthly income of $3,587 and a net monthly income of $3,159.20 compared to Wife's gross monthly income of $4,853.52 and net monthly income of $1,675.85.[2] Fourth, in accordance with the parties' ability to pay their attorney's fees and respective financial conditions, we find the attorney's fees award will not substantially affect Husband's standard of living, but saddling Wife with her attorney's and expert fees would substantially affect her standard of living, which has already decreased since the parties' divorce, as we further discuss below in section V. Thus, we find these factors weigh in Wife's favor. Accordingly, we find the family court did not err in awarding Wife attorney's fees and costs, and we affirm as to this issue.

## IV.   RETROACTIVE REDUCTION IN ALIMONY

---

[2] Wife's net monthly income is so low because she contributes $2,000 to her voluntary retirement fund per month. However, if Wife did not make this contribution, her net monthly income would be $3,675.85, about $500 more than Husband's net income.

Husband argues the family court erred in failing to make its reduction of his alimony obligation retroactive to the date he filed this action. We disagree.

We find the family court did not abuse its discretion in failing to reimburse Husband for the alimony payments he made since he filed the action to modify his alimony obligation. First, the general rule is that a modified alimony obligation begins on the date the final order is signed and is not retroactive. *See Nienow v. Nienow*, 245 S.C. 542, 545, 141 S.E.2d 648, 650 (1965) (providing the court can exercise discretion in determining when temporary alimony will start but "[s]uch alimony generally commences as of the date the [o]rder is signed"). Moreover, no special exception applies here to support deviating from the general rule as Wife (1) did not delay the proceedings but instead offered Husband several settlement offers to end the case earlier, and (2) did not agree Husband was entitled to reimbursement if his arguments prevailed at trial. *See Hopkins v. Hopkins*, 343 S.C. 301, 305–06, 540 S.E.2d 454, 456–57 (2000) (finding husband was entitled to reimbursement of overpayments of child support because at the temporary hearing, husband sought to terminate child support payments, but wife asked the court to continue payments with understanding that if former husband's position was correct then the issue of support would be established and adjusted); *Engle v. Engle*, 343 S.C. 444, 453, 539 S.E.2d 712, 716 (Ct. App. 2000) (finding the family court did not abuse its discretion in failing to award mother retroactive child support where the family court found father did not intentionally delay the proceedings and mother did delay the proceedings).

Second, the 2009 order provided Husband could not seek to modify his alimony obligation until he reached the age of sixty-six; however, Husband filed this action to reduce or terminate his alimony obligation months before he reached the age of sixty-six. Because Husband filed this action before his sixty-sixth birthday, it would be inequitable to make the reduction retroactive. *See Roof v. Steele*, 396 S.C. 373, 382, 720 S.E.2d 910, 915 (Ct. App. 2011) ("An agreement creating a spousal support obligation is modifiable by the family court unless (1) the parties have expressly designated their agreement as 'non-modifiable,' and (2) the family court has approved this limitation."); S.C. Code Ann. § 20-3-130(G) (2014). Accordingly, the family court did not err in failing to order retroactive alimony to Husband, and we affirm as to this issue.

## V.  FURTHER REDUCTION OR TERMINATION OF ALIMONY

Finally, Husband argues the family court erred in only reducing his alimony obligation to $1,500 per month instead of terminating it altogether or further reducing it based on his retirement and "decreased financial ability." We disagree.

The family court did not err declining to further reduce or terminate Husband's alimony obligation. The parties 2009 agreement, which specified Husband could seek to modify his alimony obligation once he reached sixty-six—retirement age—shows the parties' intent that Husband's retirement would be a substantial change in circumstances warranting review and perhaps modification of Husband's alimony obligation. *See Smith v. Smith*, 359 S.C. 393, 397, 597 S.E.2d 188, 189–90 (Ct. App. 2004) (noting parties agreed husband's retirement would constitute a change in circumstances, and the court would review the parties' financial condition and husband's alimony obligation if husband retired).

Nonetheless, reducing Husband's alimony obligation to $1,500 per month is necessary to maintain Wife's standard of living, which has already declined since the divorce. *See Penny v. Green*, 357 S.C. 583, 589, 594 S.E.2d 171, 174 (Ct. App. 2004) ("Several considerations relevant to the initial determination of alimony may be applied in the modification context as well, including the parties' standard of living during the marriage . . . ."). In particular, we note (1) Wife reentered the workforce at the age of fifty-four in anticipation of the parties' divorce and continued to work at the age of sixty-eight (at the time of the trial) because she cannot afford to retire; (2) since the parties' divorce, Wife has downsized from the parties' marital home to a condo; (3) Husband has only a minor $1,200 debt to Home Depot, while Wife has debts of over $131,000 for her mortgage, car payment, and several other personal debts; (4) Wife only began saving for retirement after the parties' divorce because she was a stay-at-home mother during the parties' marriage and planned on depending on Husband's retirement[3]; (5) Wife may not be able to retire if she does not continue to receive at least some support from Husband that would allow her to continue to put money into her retirement account; and (6) Wife has difficulty affording to take vacations to see her son in Chicago and cannot afford other vacations. It does not appear Husband has experienced any decrease in his standard of living up until his recent retirement. He continued to make over $350,000 per year, he has no major debts, and he paid off his mortgage on his home and the rental

---

[3] Husband contends Wife is in a better position now than she was during the marriage because she is now saving for retirement. This specious argument overlooks that Wife's standard of living during the marriage included plans to rely on Husband's income and retirement accounts to support her during their retirement years. Now, she must rely on alimony to save for her retirement.

property he owns. Furthermore, Husband can afford to pay the reduced alimony obligation given that he (1) does still have over $3,000 of income per month; (2) he has retirement and investments accounts worth over $375,000; (3) he currently pays $2,117.64—more than the reduced alimony obligation—to have two life insurance policies for his current wife's benefit; and (4) he has rental property that he currently chooses to rent to his family. *See id.* ("Several considerations relevant to the initial determination of alimony may be applied in the modification context as well, including . . . the supporting spouse's ability to continue to support the other spouse."). Accordingly, we affirm as to this issue.

**AFFIRMED.**[4]

**THOMAS, HILL, and HEWITT, J.J., concur.**

---

[4] We decide this case without oral argument pursuant to Rule 215, SCACR.